AURELIUS HEATH v. COMMISSIONER OF TRANSPORTATION OF THE STATE OF CONNECTICUT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued April 5—decision released July 11, 1978

*Angelo J. Smeraldi,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Frank W. Murphy,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff filed a statutory appeal from an assessment of damages on a parcel of land in Norwalk taken by the defendant for highway purposes. The referee, acting as a court, reassessed the damages and from that judgment the defendant has appealed.

The defendant claims that the court erred in refusing to find material facts which were admitted or undisputed. "To secure an addition on this ground, it is necessary for an appellant to point

to some part of the appendix, the pleadings, or an exhibit properly before us, which discloses that the appellee admitted that the fact in question was true or that its truth was conceded to be undisputed." *Martin* v. *Kavanewsky,* 157 Conn. 514, 515, 255 A.2d 619. Practice Book, 1963, § 628L provides that "[i]f a party claims that a fact should be found on the ground that it is material and either admitted or undisputed, the evidence or transcript of proceedings upon which the claim is based should be printed." The defendant has failed to comply with those requirements, in the absence of which we have no basis for determining whether or not inclusion would be proper. In any event, the facts which the defendant seeks to include would not affect the result reached in this case, since some are implicit in the existing finding; *Broderick* v. *Shea,* 143 Conn. 590, 591, 124 A.2d 229; and others are immaterial. *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 128, 239 A.2d 519. Consequently, the finding is not subject to amendment.

The finding reveals the following facts: The plaintiff is the owner of a parcel of land covering 0.947 of an acre located on the easterly side of Oakwood Avenue in Norwalk. On April 23, 1971, the defendant condemned the entire parcel for highway purposes and assessed damages at $34,500.

Although the property was used for residential purposes and was located in a residential zone, the surrounding area was changing to light industrial use. Several zone changes and variances had been granted over a number of years. Between 1965 and the date of taking there were at least six zone changes in the area. On June 6, 1969, for example, a variance to permit industrial use was granted on

land partially abutting that of the plaintiff. The plaintiff's appraiser testified that properties southeast of a Connecticut Light and Power Company transmission line, bordered by Oakwood Avenue on the west and the Penn Central right-of-way on the east, were within an area which was gradually being changed to light industrial use. The plaintiff's property is within this area. The plaintiff's appraiser concluded that the probability of a zone change was not speculative. He appraised the property at $96,500 as existing residential with its highest and best use as industrial based upon a reasonable probability of a change of zone.

The court visited the premises and after a hearing and full consideration of all the relevant facts concluded that the highest and best use of the property would be for industrial purposes and that there was a reasonable probability that a request for a zone change would be granted. As a result, the court found the fair market value of the property as of the date of the taking to be $76,350.

The defendant's central claim is that the court committed error in concluding that there was a reasonable probability of a zone change for the subject property. The probability of a favorable zone change is a factor to be taken into consideration in determining the price which a purchaser would pay in a voluntary transaction. *Lynch* v. *West Hartford,* 167 Conn. 67, 73, 355 A.2d 42. The rule of law on the valuation of property as affected by the probability of a zone change is set forth in *Budney* v. *Ives,* 156 Conn. 83, 88, 239 A.2d 482: "It cannot be doubted that both a prospective purchaser and a seller on the open market would consider the

probability of a change in zoning restrictions affecting property which they considered buying and selling where such a change was reasonably probable in the reasonably near future. Accordingly, where such a change is reasonably probable and not merely a remote or speculative possibility, the probability may properly be considered in the determination of the fair value of property taken by eminent domain." The issue to be addressed is not the value of property for uses which would be permitted if a change of zone were to be made, but rather the value of the property as zoned at the time of taking as it is affected by the probability of a zone change.

The plaintiff's appraiser testified as to the changing nature of the area, specifying comparable sales in the area where changes were made to industrial use and sales made for industrial use even prior to any request for a change of zone. A map graphically illustrating this transition in the area and pinpointing those sales used for comparative data was prepared by the plaintiff's appraiser. All of the zone changes, comparable sales, and the subject property are within one area: north of the Merritt Parkway, east of Oakwood Avenue, south of the Connecticut Light and Power transmission line and west of the existing route 7. A single example will serve to illustrate the effect on property value in this area of a zone change permitting industrial use: one parcel of land purchased in 1968 as residential property for $50,000 was subsequently rezoned for light industrial use and sold for $80,000.

In 1970, prior to condemnation, the defendant engaged a firm to appraise the subject property. In its report, the value was assessed at $34,500.

Subsequently, on July 21, 1972, one of the appraisers involved in this original appraisal reinspected the property and determined that there was a reasonable probability of a zone change and revised the valuation to $68,100. That testimony was offered by the plaintiff. The only appraiser produced by the defendant at trial assessed the property at $34,700. He did not base his figure upon any comparable parcels of property in the area surrounding the plaintiff's land, but relied solely upon comparable property located in strictly residential areas between three and one-half and five miles from the subject property. Despite the industrial use observable in the vicinity of the land in question, the defendant's appraiser did not consider the possibility of a change of zone.

The defendant relies heavily on the testimony of the planning director for the Norwalk planning and zoning commission. At the time of the taking, Norwalk had separate planning and zoning commissions. In the course of his duties the planning director advised the commission not to grant zoning changes in the area surrounding the subject property unless and until the proposed route 7 was an assured reality. He further testified, however, that a change to industrial use was consistent with the planning commission's long-range planning policy announced in 1962. In any event, the court found that at the time of taking the planning commission was simply advisory to the zoning commission on the question of zoning changes. Even though the planning commission had recommended to the zoning commission that it not grant any zoning changes until the highway corridor was determined and the highway constructed, the zoning commission did not follow this advice, except in one instance.

The determination of the question of whether there is a reasonable probability of a change of zone is essentially a question of fact. See *Talarico* v. *Conkling,* 168 Conn. 194, 197, 362 A.2d 862. The facts found by the court amply support its conclusion to that effect. The defendant's reliance on *Rushchak* v. *West Haven,* 167 Conn. 564, 356 A.2d 104, is misplaced. In that case, the opinions upon which the plaintiff relied in seeking to establish the probability of a zone change were based upon mere assumptions, rather than on substantive evidence establishing existing use under a changed zone and a trend to such rezoning in the surrounding area.

The defendant's final claim of error is directed to the court's refusal to admit into evidence a sketch prepared by the defendant's expert relating to a feasibility study of site development on the plaintiff's property. The plaintiff's appraiser had previously testified that, in arriving at his appraisal, he had discounted the value of the land from $2.25 to $2.00 per square foot because of the terrain of the subject property and the additional cost of developing the property because of its slope. The defendant offered the testimony of an engineer and construction estimator to establish the more than normal costs of site development if the subject property were to be utilized for industrial purposes. In support of his testimony, he had prepared a proposed grading plan with driveway and parking for the subject property. The sketch was offered relative to his feasibility study of the subject property and the unusual site development costs entailed in the event the property were to be developed for industrial usage. The plaintiff's objection to the admissibility of the sketch was sustained.

Although the finding indicates that the court sustained the plaintiff's objection on the ground that "this sketch was made in April of 1974 and there was insufficient evidence showing what the condition of the property was on April 23, 1971, the date of taking," the defendant does not direct his claim of error at this ground for exclusion. Rather, it is his position that since the plaintiff's appraiser, who was not an expert in site development, had recognized that the topography of the property was such that it warranted a discount in value, the sketch of the defendant's expert was relevant to show the extent of such costs as would be incurred by site development. This, the defendant argues, was relevant to the court's determination of the property's value.

It should be noted that this witness was permitted to testify as a qualified expert. His opinion was that the plaintiff's property would require more than usual site development were it to be converted to industrial usage. This fact was not in dispute, and, indeed, the plaintiff's appraiser had taken it into consideration in reaching his estimate of the property's value. The sketch, proffered by the defendant, constituted an attempt to estimate development costs for a particular use of the property. The court specifically found that in developing land for industrial purposes the site and its terrain can be utilized as part of the development. In other words, while the sketch assumed the development of the land to fit a certain plan, the court noted the more likely possibility of adapting a plan to fit the land. Thus, the sketch was purely speculative on the question of site development costs, focusing on one possible plan, while the plaintiff had posited no single plan, but only generalized industrial use. Further, the court found that engineering costs

alone would not be determinative on the issue of value, but would merely be one factor in the larger consideration of economic feasibility.

The court's ruling excluding the sketch from evidence was in essence based upon its speculative character. Although it may have had some bearing upon the question of value, " 'it rests in the sound discretion of the trial court to determine when matter, although probative, by reason of remoteness, cumulative nature, or other cause so lacks significance or materiality as to justify its exclusion.' " *Dana-Robin Corporation* v. *Common Council*, 166 Conn. 207, 215, 348 A.2d 560. In the present case, the sketch constituted an attempt to corroborate the general fact that the terrain of the plaintiff's land would require extensive site development by way of a specific example, which bore only a speculative relationship to what might occur were the land converted to industrial use. We cannot say, then, that the court erred in barring the sketch from evidence.

There is no error.

In this opinion COTTER, C. J., LONGO and HEALEY, Js., concurred. BOGDANSKI, J., concurred in the result.