## STATE OF CONNECTICUT *v.* ROBERT JAMES
## (13483)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued February 28—decision released June 20, 1989

*Kent Drager,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *Timothy Pothin,* former deputy assistant state's attorney, and *Maria Kahn,* legal intern, for the appellee (state).

SHEA, J. The principal issue in this appeal is whether the provision of General Statutes § 54-86h declaring that "any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification" is constitutional. We conclude that it is valid. We also find no reversible error in the plethora of other issues the defendant has raised.

After a jury trial, the defendant was convicted of attempted sexual assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-71 (a) (1); sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A); and risk of injury to a child under the age of sixteen years in violation of General Statutes § 53-21. In his appeal from the judgment the defendant claims that the court erred in: (1) allowing the complainant child to testify without first determining her competency as a witness in reliance upon the provision of § 54-86h declaring a child victim "competent to testify without prior qualification"; (2) failing to instruct the jury in accordance with a request to charge concerning special considerations relating to the credibility of a child witness; (3) prohibiting impeachment of the complainant's mother concerning a prior act of claimed welfare fraud and excluding evidence purporting to show her bias against the defendant; (4) excluding various evidence offered by the defendant and admitting evidence of prior uncharged sexual misconduct with the complainant; (5) instructing the jury upon (a) circumstantial evidence,

(b) alternative forms of risk of injury, and (c) the necessary elements of an attempt; (6) submitting to the jury the first two counts of the information, claimed to be lesser included offenses of the third count, in violation of the principle of double jeopardy; and (7) summarizing the evidence in a fashion overly favorable to the state. The defendant also claims a new trial on the ground of improper argument by the prosecutor.

From the evidence at trial the jury could reasonably have found the following facts. The complainant, L, who was twelve years old at the time of trial, lived with her mother, sister and brother in an apartment on the second floor of a building in New Haven. Her family shared the apartment with the defendant, whose aunt owned the building and occupied the first floor. The defendant occupied a back room but had use of the bathroom, kitchen and living room. On January 6, 1987, L and her family were visiting a neighbor who lived on the same street when, at about 10 p.m., her mother sent L home to get some bread and meat.

After L had entered the apartment, she encountered the defendant, who had been cooking some bacon in the kitchen. The defendant walked over to L, picked her up and laid her on the couch. He felt her breasts through her clothes. He pulled down her pants and also unzipped his own pants. L observed his erect penis. He told her not to tell her mother. At that point, there was a knock on the door, which L went to answer. Her sister, Y, was at the door. Y testified that L's pants were unzipped and halfway down and that the defendant's pants also were halfway down and she could see his penis. Y left the apartment to get her mother, M, who was downstairs on the street. Y told her mother what she had observed and they both returned to the apartment where L had remained.

M asked L what the defendant had done. L replied that he had tried to touch her. M called the defendant to come out of his room and he did so. She asked him whether he had tried to touch her daughter. When the defendant responded, "yeah, yeah, yeah," M struck him on the face and he fell to the floor. The police were called and the defendant was arrested.

I

The defendant attacks on three grounds the constitutionality of the provision of § 54-86h[1] that allows a child sexual assault victim to testify without a preliminary finding of competency, as our practice had previously prescribed: (1) the statute violates article second[2] of our state constitution, which confines the exercise of judicial power to the courts as a "separate magistracy"; (2) it violates the defendant's right of confrontation; and (3) it violates his right to equal protection of the laws. The trial court, in reliance upon § 54-86h, denied the defendant's motion for a competency examination of the complainant, L, before she would be allowed to testify before the jury. A similar motion, however, was granted with respect to another child witness, Y, L's sister, who was also twelve years old at that time, because § 54-86h applies only to child victims.

A

In *State* v. *Clemente,* 166 Conn. 501, 516, 353 A.2d 723 (1974), this court held that General Statutes § 54-86b, our state counterpart to the federal Jencks

[1] "[General Statutes] Sec. 54-86h. COMPETENCY OF CHILD AS WITNESS. No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."

[2] Article second of our state constitution provides as follows: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

Act, 71 Stat. 595, 18 U.S.C. § 3500, violated article second of our state constitution because it infringed upon the inherent power of the courts to control discovery. Relying upon this precedent, the defendant contends that § 54-86h should also be declared unconstitutional because it trespasses upon the traditional authority of courts to determine the competency of a child witness before the child's testimony may be presented. "[T]his court has also held in reviewing acts of the legislature that the legislature has not the competency to impair the essential nature or jurisdiction of any of the constitutional courts." *State* v. *Clemente,* supra, 514; see *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 142, 32 A.2d 547 (1943).

Unlike the practices and principles relating to discovery, which were deemed in *Clemente* to be within the exclusive power of the courts, the rules of evidence, including those relating to the competency of witnesses, have never in this state been regarded as exclusively within the judicial domain. Over a period of many years, the legislature has enacted various statutes modifying the rules of evidence prevailing at common law, including several rules pertaining to the competency of witnesses. These changes have been accepted by our courts and have never been challenged as violating the principle of separation of powers. R. Kay, "The Rule-Making Authority and Separation of Powers in Connecticut," 8 Conn. L. Rev. 1, 26–27 n.132 (1975); see General Statutes §§ 52-145 through 52-184c. In 1848 the common law disability of parties to testify as witnesses was removed by a statute now incorporated in General Statutes § 52-145 (a). Session Laws of 1848, c. 80, p. 70; see *Bowen* v. *Bowen,* 20 Conn. 127, 132 (1849); *Eld* v. *Gorham,* 20 Conn. 8, 12 (1849). In the same year, the common law disqualification of witnesses for conviction of certain crimes was also changed, so that such a conviction could be used only

for the purpose of evaluating the credibility of a witness, as General Statutes § 52-145 (b) presently provides. Session Laws of 1848, title 1, § 141; see *Hall* v. *Brown,* 30 Conn. 551, 557 (1862). The view of the early common law that a spouse could not testify in support of a party-spouse has also been the subject of statutory reform. General Statutes § 54-84a; see C. McCormick, Evidence (3d Ed.) § 66; *Merriam* v. *Hartford & New Haven R. Co.,* 20 Conn. 354, 363 (1850); *Stanton* v. *Wilson,* 3 Day (Conn.) 37, 55 (1808). The legislature has modified the ancient view that a person "who did not believe in a supreme being and a future state could not be a competent witness" by enacting statutes that permit witnesses to affirm under the penalties for perjury or false statement and that also allow the court to use any other suitable ceremony instead of the prescribed oath for witnesses. *State* v. *Dudicoff,* 109 Conn. 711, 716–17, 145 A. 655 (1929); see General Statutes §§ 1-22, 1-23, 52-145; *Atwood* v. *Welton,* 7 Conn. 66, 73 (1828).

These statutory revisions of antiquated conceptions relating to the competency of a witness have never been regarded as exceeding the legislative prerogative. Our acceptance of them as well as other legislative changes in the rules of evidence since the adoption of our state constitution in 1818 plainly distinguishes such statutes from those pertaining to court "administration, practice or procedure," which we have held not to be binding on the constitutional courts, while acknowledging our frequent practice of either express or implicit "acquiescence" therein. *Adams* v. *Rubinow,* 157 Conn. 150, 156, 251 A.2d 49 (1968).

This court has held unconstitutional statutes modifying the rules of evidence in such manner as to defy logic, such as those creating presumptions, whether rebuttable; *Mott's Super Markets, Inc.* v. *Frassinelli,* 148 Conn. 481, 489–91, 172 A.2d 381 (1961); or irrebutta-

ble. *Ducharme* v. *Putnam,* 161 Conn. 135, 141, 285 A.2d 318 (1971). In these cases, however, we have not relied upon any grant of exclusive authority to the courts under article second to promulgate rules of evidence but upon other constitutional principles, such as due process and equal protection. "Constitutionally, the legislature can no more bind the courts to such a factually unsupportable conclusive adjudication than it can require their adjudication that a camel is a horse by the enactment of a statutory conclusive presumption that all four-footed animals are horses." *Ducharme* v. *Putnam,* supra, 140.

We are aware that the Supreme Courts of the states of Mississippi, Arizona and Washington, under state constitutional provisions similar to article second, have asserted either an exclusive or a primary authority to establish rules of evidence under the rule-making power of the judiciary. *Hall* v. *Mississippi,* 539 So. 2d 1338 (Miss. 1989); *State* v. *Robinson,* 153 Ariz. 191, 196–98, 735 P.2d 801 (1987); *State* v. *Ryan,* 103 Wash. 2d 165, 178, 691 P.2d 197 (1984). In these cases, however, which involved statutes creating hearsay exceptions for child abuse victims unavailable to testify, the state courts had promulgated rules of evidence concerning the admission of hearsay with which the legislative enactments conflicted. The courts of this state, however, have not yet attempted to create any code of evidence through the exercise of our rule-making authority. Thus, § 54-86h does not conflict with any rule of evidence established by the judiciary of this state. We leave to another time the question whether our constitutional authority to make rules governing court "administration, practice or procedure"; *Adams* v. *Rubinow,* supra, 156; extends also to the creation of a code of evidence and the resolution of possible conflicts between its provisions and legislative enactments affecting the same matters. We conclude that § 54-86h

does not transgress the provision of article second confiding the judicial power in the constitutional courts.

## B

The claim of the defendant that § 54-86h violates his rights of due process and of confrontation assumes that the testimony of a child who cannot meet orthodox standards for qualification as a witness is necessarily unreliable and that the cross-examination of such a witness is necessarily ineffective. These assumptions are wholly out of tune with the modern trend towards the treatment of competency as simply one aspect of the credibility of a witness. They also conflict with current child development research indicating that "even very young children can be credible eyewitnesses, particularly when combined with the other findings that children are as capable as adults of answering direct objective questions and are no more easily swayed into incorrect answers by leading questions." B. Marin, D. Holmes, M. Guth & P. Korvac, "The Potential of Children as Eyewitnesses: A Comparison of Children and Adults in Eyewitness Tasks," 3 Law and Hum. Behav. 295, 304 (1979). Rule 601 of the Federal Rules of Evidence declares that "[e]very person is competent to be a witness,"[3] thus eliminating in federal trials any requirement for preliminary qualification of any witness. This rule "reflects the philosophy that few persons are inherently incapable of testifying in a useful manner." Comment, "The Competency Requirement for the Child Victim of Sexual Abuse: Must We Abandon It?", 40 U. Miami L. Rev. 245, 252 (1985). Some eminent commentators for many years have suggested that it is

[3] Rule 601 of the Federal Rules of Evidence provides as follows: "Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."

preferable "to put the child upon the stand and let it tell its story for what it may seem to be worth"; 2 J. Wigmore, Evidence (3d Ed. 1940)§ 509; rather than to exclude altogether the testimony of such a witness, "who may be the only person available who knows the facts." C. McCormick, supra, § 62. "Rule 601 represents the culmination of the modern trend which has converted questions of competency into questions of credibility while 'steadily moving towards a realization that judicial determination of the question of whether a witness should be heard at all should be abrogated in favor of hearing the testimony for what it is worth.' " 3 J. Weinstein & M. Berger, Evidence § 601[05], quoting comment, "Witnesses under Article VI of the Proposed Federal Rules of Evidence," 15 Wayne L. Rev. 1236, 1250 (1969).

Federal Rule § 601 has not been construed to remove wholly the traditional control a judge may exercise to ensure that evidence presented to a jury has at least a minimum degree of reliability and relevance. Instead of deciding competency on the basis of such a traditional standard as comprehension of the significance of the oath, the federal courts have been deciding "minimum credibility." 3 J. Weinstein & M. Berger, supra, § 601[01]. In *State* v. *Fulton*, 742 P.2d 1208, 1218 (Utah 1987), a state evidence code provision identical to rule 601 was held not to violate the right to a fair trial in a child sexual assault case because the court under another provision of the code was authorized to exclude testimony if its probative value was substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. Our courts have similar authority to exclude evidence that may be more prejudicial than probative. *State* v. *Higgins*, 201 Conn. 462, 469, 518 A.2d 631 (1986); *Heath* v. *Commissioner of Transportation*, 175 Conn. 384, 392, 398 A.2d 1192 (1978). Certainly if a child sexual assault victim could

only babble or could present no useful evidence, its testimony could hardly be deemed relevant or probative.

There is little merit in the defendant's claim of a violation of his right of confrontation. A child sexual assault victim is subject to cross-examination like any other witness. The same questions that a defendant might have asked at a competency hearing would ordinarily be allowed as part of the cross-examination of the child, since competency is closely related to credibility. Many witnesses, not only children, have difficulty in remembering events, understanding questions, and expressing themselves clearly, disabilities that often raise problems for the cross-examiner. The absence of the preliminary hearing for a child sexual assault victim does not in our judgment significantly hamper effective cross-examination so long as the child can give testimony satisfying minimum standards for relevancy.

## C

The defendant's claim that § 54-86h violates the constitutional principle of equal protection is based upon the narrowness of its classifications both as to the witnesses to whom it applies, "any child who is a victim of assault, sexual assault or abuse," and the perpetrators of such crimes, commonly termed "child molesters." He relies upon a quotation from a dissenting opinion in a case upholding a similar statute; *State* v. *Williams,* 724 S.W.2d 197, 202 (Mo. 1987) (Blackman, J., dissenting); that "[l]ess process is apparently due an accused molester than other defendants enjoy." We agree, however, with the majority en banc opinion of the Supreme Court of Missouri, which rejected the claim that an exception for child abuse victims to the normal competency requirement for children under ten years of age violated equal protection. The majority concluded that there was a rational distinction between child sexual abuse crimes, in which the secrecy attend-

ing their commission ordinarily leaves the child victim as the only significant witness to the acts constituting the offense, and other crimes where the testimony of children is seldom vital and rarely used. Id., 202. "Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there are often no witnesses except the victim." *Pennsylvania* v. *Ritchie,* 480 U.S. 39, 60, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). The state has a legitimate interest in removing the competency barrier in order to facilitate the prosecution of child abuse cases because such cases cannot ordinarily be prosecuted unless the child victim is allowed to testify. Furthermore, the interest of the state in prosecuting such cases may reasonably be viewed as greater than its concern with other crimes, because the welfare of children, which is a primary concern of society, is seriously threatened by child abuse offenses. We conclude that the separate classificaton of child abuse victims in respect to the competency requirement rests upon a rational basis and, therefore, does not violate the constitutional principle of equal protection.

## II

The defendant next claims error in the failure of the trial court to instruct the jury upon certain special considerations applicable to the credibility of a child witness. He filed a request that the jury be advised to take into consideration the youth of L and Y, both of whom were twelve years old when they testified at the trial, and that a cautionary instruction be given that "in certain respects a young child is more apt to err than an older person; he or she is apt to be more amenable to any influence or suggestion which may be made to them by older persons; their imagination also often misleads them; its products may take on all the semblances of actual fact and they will relate them as such; the sanctity of the oath and the solemnity of legal proceedings

may appeal to them less than to an adult."[4] The court declined the request but did give a rather elaborate charge on the credibility of witnesses generally, with no specific reference to children as witnesses. In summarizing the evidence relating to the various charges, however, the court several times referred to L's age of twelve years and also stressed the importance of her out-of-court statement concerning the incident, given soon after its occurrence, in weighing her credibility.

In *State* v. *Anderson,* 152 Conn. 196, 205 A.2d 488 (1964), also a child abuse case, this court found harmful error in the failure of the trial court to grant "in substance" a request to charge that was identical to that proposed by the defendant in this case, even though the instructions on credibility were otherwise adequate. Recognizing that the charge requested in *Anderson* is indistinguishable from that sought by the defendant in this case, the state argues that this precedent is obsolete and should be overruled. The state also contends that the omission of the requested charge was harmless in any event because of the overwhelming evidence of guilt.

Our research indicates that *Anderson* stands alone in mandating that a special cautionary charge on the credibility of a child witness must always be given when requested. "The prevailing view . . . is that a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness, and, if so, the nature

---

[4] This request was apparently taken from 2 D. Wright, Connecticut Jury Instructions (2d Ed. 1975) § 643. The defendant's request to charge, however, omitted the following portion of the suggested instruction: "On the other hand, motives of interest and ultimate design or purpose often sway him less than they do an adult. Perhaps these suggestions by me are sufficient to indicate to you that in weighing the testimony of a child, his very youth is a factor you should not overlook, and to make it clear that you should apply to it your own experience of childhood."

of that instruction." *Commonwealth* v. *Avery,* 14 Mass. App. 137, 141, 437 N.E.2d 242 (1982); *People* v. *Cunningham,* 194 Colo. 198, 204, 570 P.2d 1086 (1977); *Lewis* v. *State,* 264 Ind. 288, 297, 342 N.E.2d 859 (1976); *State* v. *Bolton,* 28 N.C. App. 497, 499, 221 S.E. 2d 747 (1976); *Marks* v. *State,* 63 Wis. 2d 769, 780–81, 218 N.W.2d 328 (1974); see *State* v. *Carrillo,* 108 Ariz. 524, 525–26, 502 P.2d 1343 (1972); *People* v. *Feldt,* 26 App. Div. 2d 743, 744, 272 N.Y.S.2d 223 (1966), aff'd, 22 N.Y.2d 839, 239 N.E.2d 733, 293 N.Y.S.2d 103 (1968), habeas corpus dismissed sub nom. *United States ex rel. Feldt* v. *Follette,* 298 F. Sup. 1298 (S.D.N.Y. 1969). The difficulty of fixing an age when such an instruction would be necessary has troubled some courts, which take the view that "the trial judge can more accurately determine those instances when the instruction would be appropriate." *State* v. *Bolton,* supra, 499. The desirability of such an instruction for twelve year old children, like L and Y, has been seriously questioned. Id. Other courts have found a special child credibility instruction, even when appropriate, not to be essential where there is corroboration. See, e.g., *State* v. *Bessey,* 423 A.2d 244 (Me. 1980).

"Underlying many of the decisions, however, is the concern that an instruction [that] singles out the testimony of the child witness for special scrutiny may infringe upon the jury's exclusive role as arbiter of credibility." *Commonwealth* v. *Avery,* supra, 142; see *People* v. *Cunningham,* supra, 204; *Lewis* v. *State,* supra, 297. Authorities, more qualified than judges in regard to child behavior, question the conventional wisdom that children are less likely to be truthful on the witness stand than adults and, at least with regard to children as old as L and Y, that they are less capable of distinguishing the real from the imaginary. B. Marin et al., "The Potential of Children as Eyewitnesses. . . ," supra; G. Melton, "Children's Competency to Testify,"

5 Law and Hum. Behav., 75, 82 (1981);[5] J. Landwirth, "Children as Witnesses in Child Sexual Abuse Trials," 3 L. Guardian Rptr. (Issue IV 1987) p. 2;[6] B. Nurcombe, "The Child as Witness: Competency and Credibility," 25 J. Am. Acad. of Child Psychiatry 475, 479 (1986).[7] We note that some standard sources of pattern jury instructions upon child credibility presently omit any

[5] G. Melton states the following conclusions: "While there are some gaps in the relevant literature, the available research in sum suggests that liberal use of children's testimony is well founded, to the extent that the primary consideration is the child's competency to testify. Memory appears to be no more of a problem than in adult eyewitnesses when recollection is stimulated with direct questions. Children also are no more prone to lying than adults. Data on suggestibility are less clear but seem to indicate fewer age differences than might be suspected, a finding which needs to be further investigated. Young children's ability to conceptualize complex events is more problematic, although it is possible that, with skillful examination, jurors can follow children's line of inference sufficiently to evaluate their testimony. That hypothesis is worthy of investigation, particularly given that the task of weighing children's competency is currently strictly the province of the judge."

[6] J. Landwirth comments on child credibility as follows: "A resurgence of activity in modern child psychology research suggests that there is little correlation between age and honesty and that children do not tend to fantasize about things outside of the realm of their normal life experiences. It has also been shown that children's short-term memory for facts about which they have understandable information may be as good as adults' and that children appear to be no more susceptible than adults about events for which their memory is equally strong. Similarly, the recanting of original statements by child victims, once taken as an expression of their propensity to fantasize, is now better understood as a manifestation of the complex family dynamics in child sexual abuse cases."

[7] B. Nurcombe reports the following findings: "Children under 9 years of age have less capacity than older children to recall past events without prompting. There is also evidence that younger children are more likely than older children, adolescents and adults to be influenced by suggestive questions, though research has been inconsistent on this point. Nevertheless, if prompted, children as young as 3 years of age can recall past events quite well, although they will have difficulty under 10 years of age dating the events or attributing the appropriate motivation and intention to other people. Despite conventional wisdom, there is no evidence that children are more prone to lie than adults, and no evidence that they are more prone to confabulate or fabricate complex allegations."

implication that the testimony of a child witness is likely to be less accurate, more amenable to suggestion, more influenced by imagination or less appreciative of the importance of telling the truth than that of older persons, as the instruction requested by the defendant declares. See, e.g., E. Devitt & C. Blackmar, Federal Jury Practice and Instructions (3d Ed.) § 17.17, 1980 Pocket Parts (noting that a paragraph containing such remarks about a child's testimony had been deliberately omitted, "since it contains comments that the judge might not want to make in a particular case" and that "Seventh Circuit Pattern 3.24 takes the position that the 'child witness' instruction should not be given").

It is possible to distinguish this case from *State* v. *Anderson,* supra, in that the two children who testified in that case were ten and eight years old respectively as compared to the age of twelve years for the two girls who testified in this case. In *Anderson* there appears to have been no corroboration of the children's testimony, while here the complainant's mother testified that immediately after the incident the defendant admitted that he had tried to "touch" her daughter.

We conclude, nevertheless, that *Anderson* should be overruled in holding that it is essential to grant a requested charge that denigrates a child as usually less worthy of belief than an adult, especially when it treats all children uniformly regardless of differences in age or intelligence and also omits any reference to factors commonly recognized as enhancing the credibility of a child.[8] The only authority cited for the proposition that such a charge is vital was *Handler* v. *Remington Arms Co.,* 144 Conn. 316, 320, 130 A.2d 793 (1957), a case not involving a request to charge on child witness credibility but stating the general principle that

---

[8] See footnote 3, supra.

the court is obliged to comply with a requested charge upon an applicable rule of law when properly framed. The instruction requested by the defendant was not for the statement of any rule of law but for a cautionary comment upon the evidence. We have frequently referred to the broad discretion of a trial court in commenting upon the evidence. *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 297, 465 A.2d 294 (1983); *Bruneau* v. *Quick,* 187 Conn. 617, 628–29, 447 A.2d 742 (1982); *State* v. *DeMatteo,* 186 Conn. 696, 705, 443 A.2d 915 (1982). "The degree to which reference to the evidence may be [made] necessary lies largely in the discretion of the court." *State* v. *Vincenzo,* 171 Conn. 240, 244, 368 A.2d 219 (1976). We conclude that the trial court did not abuse its discretion in refusing the defendant's request to charge upon the credibility of a child witness.

## III

The defendant claims next that his rights of confrontation and to impeach a witness who testified against him were violated by several erroneous rulings of the trial court.

## A

The defendant claims that he should have been allowed to impeach the credibility of M, the mother of L and Y, because of her claimed fraudulent receipt of excessive welfare payments arising from her failure to report $310.82 in earnings from employment from September to November, 1980. The money had been paid back. M testified on cross-examination that she had not committed welfare fraud. It is questionable whether the proffered evidence related to the veracity of the witness, since there was no indication that M was aware of her obligation to report her earnings. Even if the evidence did involve untruthfulness, the court was well within its discretion in excluding it because of its

remoteness in time, its minimal bearing on credibility, and its tendency to inject a collateral issue into the trial. *Vogel* v. *Sylvester,* 148 Conn. 666, 676, 174 A.2d 122 (1961); C. Tait & J. LaPlante, Handbook of Connecticut Evidence § 7.22.2. We find no error in this ruling.

### B

In cross-examining the complainant's mother, M, the defendant asked whether she had wanted to get the defendant out of the apartment, which he had been sharing with her family. The court sustained the state's objection and noted an exception to the ruling. Defense counsel explained that the purpose of the question was to show that M, whom the defendant had called to the stand as his witness after the state had rested its case, in which M had also testified, was a hostile witness. After some further questioning in the absence of the jury, the court ruled that M was a hostile witness and could be cross-examined by the defendant. Thus, the stated purpose of the inquiry the court had excluded was attained and any error was harmless.

The defendant next inquired whether M was "in the middle of an eviction proceeding from the apartment that [she rented] from the defendant's aunt, [P]." The state's objection on the ground of relevancy was sustained and an exception was noted. The defendant then made an offer of proof in which he claimed that M had a motive for lying against the defendant because of a pending eviction proceeding brought by his aunt, P, which related to M's failure to pay the rent due before the date of the sexual assault incident, January 6, 1987. The eviction proceeding had not commenced until February 6, 1987, and was still pending on the date M was testifying, April 29, 1987. M had previously testified that there had been some discussions concerning the nonpayment of rent prior to the date of the incident. The court, nevertheless, adhered to its previous

ruling that inquiry of M relating to bias against the defendant arising out of the dispute over the nonpayment of rent and her desire to exclude the defendant from the apartment was irrelevant.

"Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982). "To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' " Id., quoting *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Although the scope of cross-examination rests generally within the discretion of the trial court, the preclusion of all inquiry upon a particular subject matter tending to show bias is erroneous. *State* v. *Ortiz,* 198 Conn. 220, 226, 502 A.2d 400 (1985); *State* v. *Ouellette,* 190 Conn. 84, 103, 459 A.2d 1005 (1983).

We find error in the trial court's rulings barring cross-examination of M concerning her desire to have the defendant out of the apartment because of her deteriorating relationship with him and with his aunt, who had allowed him, after the incident, to move into her home in the same building. The defendant's attempt to show that M was biased against him even before the date of the sexual assault incident was thwarted by these rulings. The court may have regarded the proffered evidence of motivation as not especially persuasive, but the weight of such evidence was properly a question for the jury in evaluating the credibility of M.

We conclude, nevertheless, that, although the ruling was erroneous it was undoubtedly harmless. In argu-

ing that his inquiries concerning the delinquent rent and the eviction were pertinent, the defendant expressly abjured any claim that M had conspired to have the defendant arrested on the sexual assault charges. He maintained simply that this evidence was relevant to "the bias of this witness to testify." There was, however, abundant additional evidence that M was biased against the defendant because she believed he had attempted to assault her daughter sexually and had even struck him at the time of the incident. Since the defendant explicitly disclaimed the theory that M had induced her children, L and Y, to concoct the sexual assault incident as a ground for removing the defendant from the apartment and limited his claim to "the bias of M to testify," the additional basis for M's animosity toward him that the excluded evidence would have shown was only of minor significance when compared to the intensity of her hostility arising from her belief that the defendant had attempted a sexual assault upon her daughter.

Furthermore, M's testimony was not of any great significance, because it was for the most part a repetition of L's testimony concerning the incident, admissible under the exception to the hearsay rule for sexual assault victims to show constancy of accusation. *State v. Dabkowski*, 199 Conn. 193, 199, 506 A.2d 118 (1986). M's testimony, based upon her own observations concerning the defendant's admission to having touched L, was confirmed by both L and Y, and a tape recording of L's account of the incident given to the police a few hours after the event was admitted into evidence. Thus M's testimony was largely cumulative and the erroneous ruling restricting her cross-examination for bias was harmless under all the circumstances.

## IV

The remaining evidentiary rulings that the defendant claims were erroneous do not require such elaborate discussion. We find no reversible error.

## A

The defendant offered the testimony of a developmental and clinical psychologist concerning factors relevant to the credibility of child witnesses in general. The psychologist conceded that he could not make an assessment of the credibility of L and Y, whom he had never examined, without an extensive study of their background. "The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions." *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). We have upheld the exercise of such discretion to exclude expert testimony relating to the accuracy of eyewitness identification. Id. "[T]he introduction of expert testimony would be 'a superfluous attempt to put the gloss of expertise, like a bit of frosting, upon inferences which lay persons were equally capable of drawing from the evidence.' " Id., 478–79, quoting *State* v. *George,* 194 Conn. 361, 373, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). We conclude that the trial court properly exercised its discretion in excluding the testimony of the psychologist.

## B

The defendant claims that he was prevented by an erroneous ruling from testifying to the conversation between him and L when she entered the apartment. When the defendant took the witness stand he testified that he was in the bathroom preparing to go to bed when L entered the apartment at about 10 p.m. He heard her in the living room and she asked him why he had turned off the lights. He replied that he had turned them off because he was going to bed. L then started arguing with him, saying that he should not have all the lights off and that she was going to tell her mother. He replied, "[W]hy not, I pay the light

bills.'' The defendant proceeded then to the kitchen, which was lighted, and to his room. He returned to the living room where L was standing with illumination coming only from the kitchen. He indicated that he wanted the lights off.

The defendant testified that L began to argue with him. "She wanted the lights on. She said my mother—.'' At this point the state objected on the ground of hearsay and the court sustained the objection. Defense counsel asked a further question, "When she came into the apartment, the living room, and you began to have an argument with her, what was it that you said to her?'' The state objected on the ground of hearsay and the court again sustained the objection.

We agree with the defendant that the rulings were erroneous. A statement made out of court is not hearsay unless it is offered to establish the truth of the facts contained in the statement. *Murray* v. *Supreme Lodge, N.E.O.P.,* 74 Conn. 715, 718, 52 A. 722 (1902); C. Tait & J. LaPlante, supra, § 11.1. It does not appear that the purpose of the inquiries concerning the details of the argument between L and the defendant was to prove the truth of any assertions that had been made, because their accuracy was irrelevant to the issues in the case.

Nevertheless, the error was harmless. The defendant had already testified without objection that he and L had argued about turning off the lights. The defendant made no offer of proof concerning what additional testimony concerning his conversation with L he intended to bring forth by the questions excluded. Although the defendant was entitled to testify concerning all the details of his encounter with L, including the conversations between them, he has not demon-

strated that the absence of such evidence could reasonably have impaired his defense against the crime charged.[9]

Various other rulings of the trial court excluding testimony that the defendant had been falsely accused by M of sexually molesting L two days before the date of the crime charged also appear to have been based partly upon the misconception that anything said out of court is hearsay regardless of whether the truth of the assertions is relevant to the issues. To the extent that this testimony may have reflected upon the credibility of L rather than the animosity of M, however, it was hearsay and was properly excluded as more prejudicial than probative. L had never been questioned about accusing the defendant of anything prior to the incident charged. These rulings, in any event, are too inconsequential to warrant further discussion.

## C

The defendant claims error in the denial of his motion in limine to exclude testimony of L that he had made a sexual advance to her about three months before the attempted sexual assault on January 6, 1987. At trial L testified that, soon after her family had moved into the apartment in October, 1986, she was watching television when the defendant, who was the only other person in the apartment, felt her breasts, which were covered by her shirt, but did nothing further. She did not tell anyone of this occurrence until after the defendant's arrest for the attempted sexual assault.

The defendant claims that the evidence should have been excluded because it showed only a propensity to

[9] The defendant testified that, after his quarrel with L about the lights in the living room, he went to his room to watch television. Moments later, L's mother, M, entered the apartment, accused him of touching her daughter, went into a rage and struck him. He denied touching L and also hearing or seeing Y at the door of the apartment prior to the time M entered.

commit the crime and had only minimal probative value upon relevant issues. See *State* v. *Williams,* 190 Conn. 104, 106–109, 459 A.2d 510 (1983). " 'That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material.' " *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756 (1974). In this case the evidence was admissible to show, not that the defendant had a propensity to commit the class of crime involved, but to prove he was especially attracted toward L. That the defendant had a particular sexual interest in L is certainly relevant to his motivation to commit the crime charged. It is widely recognized that other misconduct evidence is admissible to prove motive, as an exception to the general prohibition against such evidence. *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982). Evidence of prior sexual misconduct with the complainant in a sexual assault case has commonly been admitted to show a lustful inclination toward the victim *State* v. *Schut,* 71 Wash. 2d 400, 402, 429 P.2d 126 (1967); annot., 77 A.L.R.2d 841, 852.

## D

The remaining claim is that the court refused to conduct an in camera review of the school records of L, which the defendant had produced in court by a subpoena upon a school official, and also failed to mark the records for identification. When the official was asked whether the records were "strictly school records regarding grades, et cetera," he responded affirmatively. The defendant then asked, "Is there anything in the pack you have with you regarding her family or social situation?"

The state objected on the grounds that "[t]he statute doesn't permit it" and that the defendant was asking disclosure of "what should be protected under a

general privilege."[10] The court inquired as to why the witness should answer the question to which objection had been raised. Counsel for the defendant responded, "I don't believe that he should" and withdrew the question. Defense counsel then requested the court to review the school records of L in camera. The court denied the motion, noted an exception and excused the witness. The court also refused to mark the school records for identification as requested.

We have found error in the refusal of a trial court to examine documents in camera where a sufficient foundation has been laid to indicate a reasonable likelihood that they contain material relevant to the case or useful for impeachment of a witness. *State* v. *Hufford,* 205 Conn. 386, 404–405, 533 A.2d 866 (1987); *State* v. *Januszewski,* 182 Conn. 142, 172–74, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Where the documents may include items that are privileged, a waiver must first be obtained. *State* v. *Hufford,* supra, 403–404; *State* v. *Pierson,* 201 Conn. 211, 228, 514 A.2d 724 (1986). In this case, however, no showing was made that the school records contained anything relevant to the case or to the credibility of L. See *State* v. *Esposito,* 192 Conn. 166, 180, 471 A.2d 949 (1984). The mere fact that the documents were "strictly school records regarding grades, et cetera" is not sufficient to establish a reasonable ground to believe that they may have contained anything related to the issues at trial or the credibility of L. The defendant withdrew the question that might have elicited testimony to satisfy this

---

[10] On appeal the state makes no claim that school records are privileged documents, statutorily or otherwise, but relies upon the absence of any showing of relevance. General Statutes § 10-15b provides that such records may be subpoenaed and filed with the clerk of court. The records are to be sealed and may be opened for inspection only upon "the order of a judge of the court concerned."

requirement. The record before us, therefore, is barren of any indication that the school records contained anything pertinent to the case.

We have also stated that it is the duty of the trial court to mark as an exhibit for identification virtually anything offered during a trial that is claimed to be relevant for the purpose of preserving an adequate record on appeal. *State* v. *Onofrio,* 179 Conn. 23, 34–35, 425 A.2d 560 (1979); *Drazen Lumber Co.* v. *Casner,* 156 Conn. 401, 405–406, 242 A.2d 754 (1968). In this case, however, although the trial court's ruling was erroneous, it was harmless because the school records had not been offered in evidence and the requisite foundation for an in camera inspection was never even arguably established. *State* v. *Esposito,* supra.

## V

The defendant claims several errors in the instructions to the jury. We find no error so significant as to warrant a new trial.

## A

In charging upon circumstantial evidence the court included the following statement concerning the drawing of inferences from such evidence: "Such an inference may be made provided two elements in the application of this rule are satisfied: that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt; and that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find that *it is more probable than not that the fact to be inferred is true and has been proven beyond a reasonable doubt.*" (Emphasis added.) Although there was no exception to this instruction, a claim that a charge dilutes the burden of proof in a criminal case is reviewable in any event

because it implicates a fundamental right. *State* v. *Whelan,* 200 Conn. 743, 756, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

We have frequently condemned similar instructions that purport to combine the probability standard of proof applicable to civil cases with the criminal standard of proof, beyond a reasonable doubt, as needlessly confusing to a jury. *State* v. *McDonough,* 205 Conn. 352, 355–56, 533 A.2d 857 (1987), cert. denied,      U.S.      , 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). The jury instruction in this case, while confusing, is not particularly prejudicial to a defendant, however, because it requires not only that the facts from which the inference is drawn be proved beyond a reasonable doubt, but also that the inference itself be both probable and "proven beyond a reasonable doubt." The state might well have complained that such a charge imposed a far greater burden upon it than the standard requirement that only the inference of guilt as to each element of the crime, as distinguished from the totality of the subordinate facts from which the inference is to be drawn, need be proved beyond a reasonable doubt. Id., 355. In any event, the possible ambiguity created by using both the civil and criminal standard of proof for inferences was adequately corrected by the remainder of the charge, which plainly imposed the burden on the state to prove each element of the crimes charged beyond a reasonable doubt. See id., 356–62.

## B

The defendant claims that the court erred in charging upon risk of injury by submitting alternative forms of the crime that were uncharged and wholly unproved. The third count of the information alleged a violation of § 53-21,[11] our risk of injury to children statute, by

[11] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully

engaging in the conduct described in the first and second counts, "which conduct was likely to impair the health or morals of [L] who was under the age of sixteen." The first count alleged that the defendant had attempted to have sexual intercourse with L in violation of § 53a-49 (a) (2) and § 53a-71 (a) (1)[12] and the second count alleged that he had intentionally subjected her to sexual contact by fondling her breasts in violation of § 53a-73a (a) (1) (A).[13]

We have construed § 53-21 "to proscribe two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." (Citation omitted.) *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). The third count of the information, which refers only to specific acts the defendant "directly perpetrated" or attempted against L, must be deemed to charge risk of injury based upon only the second of these categories of conduct.

The trial court, nevertheless, read the entire statute to the jury in charging upon the third count and also

causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[12] "[General Statutes] Sec. 53a-71. SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

[13] "[General Statutes] Sec. 53a-73a. SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

pointed out that it contained alternatives. In discussing the evidence relating to the charge, however, the court referred only to the physical acts performed by the defendant upon the person of L in the course of attempting to have sexual intercourse with her. "Those were the acts and conduct which were presented constant [sic] with the elements of the crime of risk of injury as I read that statute."

The court should not have read the portion of § 53-21 relating to placing a child "in such a situation that its life or limb is endangered or its health is likely to be impaired," because no such conduct was charged nor was any evidence supporting that alternative produced. "It is the duty of the court to submit to the jury only those issues [that] are relevant not only to the pleadings but also to the facts in evidence and to submit to the jury no issue foreign to the facts in evidence." *State v. Cofone,* 164 Conn. 162, 168, 319 A.2d 381 (1972). We have frequently disapproved the practice of reading an entire statute to a jury when, under the pleadings or the evidence, only a portion of it is applicable. *State v. Dahlgren,* 200 Conn. 586, 597, 512 A.2d 906 (1986); *State v. Carter,* 189 Conn. 631, 645, 458 A.2d 379 (1983). Despite this deficiency, however, the charge cannot reasonably be viewed as submitting to the jury any basis for a risk of injury conviction other than the acts perpetrated on the person of L that also form the basis of the charges in the first and second counts. Because the jury found the defendant guilty of the charges in those counts, it must necessarily have found the facts that form the basis of the risk of injury charge in the third count, which expressly relies upon the same acts alleged in the first and second counts. It is clear, therefore, that the verdict on the third count rests upon a finding that the defendant committed the acts alleged in that count, which were adequately proved by the evidence.

The defendant claims also that the court should not have submitted the statutory alternative of committing "any acts likely to impair the health" of a child under the age of sixteen years. General Statutes § 53-21. He maintains that the acts of attempted sexual assault and sexual contact with L, a twelve year old child, did not involve a sufficient likelihood of impairment of her "health," in contradistinction to her "morals," to support a finding of guilty based on that alternative. We disagree with that assertion. The jury could reasonably have found that the defendant's actions, if they had culminated in sexual intercourse as he intended, entailed the risk of health impairment for a child of twelve years, especially because of the associated risk of pregnancy. We need not consider in this case whether the term "health" in the statute encompasses mental as well as physical health or whether mental health is an aspect of "morals." There was sufficient evidence to support a finding that the defendant's acts threatened the physical health of the complainant.

Another facet of the defendant's claim is that the court did not specifically advise the jurors that their verdict had to be unanimous on at least one of the statutory alternatives, impairment of "health" or of "morals," thus creating the possibility that some of the jurors found only a risk to the health of L while others found only a risk to her morals. See *United States* v. *Gipson*, 553 F.2d 453 (5th Cir. 1977). In this case, because of the unanimous verdicts on the first and second counts, which specify the same acts relied upon in the risk of injury count, there is no possibility of any lack of unanimity about what acts the defendant committed upon L's person. The possibility that the jurors may have differed as to whether those acts endangered L's health or her morals strikes us as utterly immaterial when the statute makes either of these consequences upon a child a basis for conviction of the crime.

Both of these possible effects of conduct upon a child, in this case plainly prohibited by other statutes, involve the well-being of a child as a whole person, alive both physically and morally. It is the threat posed by such acts to the welfare of the child, physical or moral, that the statute is designed to counteract. In this sense, the risk of injury to a child's health is not conceptually distinct from a risk of injury to a child's morals. We have held a specific unanimity charge not to be required where the statutory alternatives are not conceptually distinct in the context of a particular case. *State* v. *Bailey,* 209 Conn. 322, 334–35, 551 A.2d 1206 (1988). Under the circumstances of this case, we conclude that a specific unanimity instruction on the alternatives of risk to health or morals was not required and would have been inappropriate.

## C

The defendant next contends that the court should not have submitted to the jury all three counts of the information. He claims that, because the third count of risk of injury, as the basis for that charge, referred to the defendant's conduct as "more particularly described in the first and second counts," which alleged respectively attempted sexual assault in the second degree and sexual assault in the fourth degree, those offenses were necessarily included in the third count. He contends that his conviction upon all three counts, therefore, violates the constitutional prohibition against double jeopardy.

This court has held that "risk of injury and sexual assault in the second degree, are not the same offense for double jeopardy purposes." *State* v. *McCall,* 187 Conn. 73, 92, 444 A.2d 896 (1982). We reached this conclusion because the requirement of § 53-21 for an act likely to impair the health or morals of a child is not a necessary concomitant of sexual intercourse. Id., 91.

The same analysis, recognizing the necessity for an act endangering the health or morals of a child as an element in § 53-21 not included in a charge of sexual assault in the second degree, would obviously apply to an attempt to commit that crime, as charged in the first count of the information. Even though the risk of injury count in this case relies partly on the conduct of the defendant alleged in the first count for a description of the acts constituting the violation, the mental element involved in *attempting* to commit sexual assault in the second degree is not a requisite for a conviction of risk of injury based upon performing acts on the person of a child likely to impair its health or morals. We have held that "[s]pecific intent is not an element of the crime defined in the second part of § 53-21," upon which the third count is based. *State* v. *Dennis,* supra, 251; see *State* v. *Martin,* 189 Conn. 1, 12–13, 454 A.2d 256, cert. denied, 461 U.S. 933, 103 S. Ct. 2098, 77 L. Ed. 2d 306 (1983). Only an "intention to make the bodily movement which constitutes the act which the crime requires," which we have referred to as a general intent, is necessary. W. LaFave & A. Scott, Substantive Criminal Law (1986) § 3.5 (e); see *State* v. *Martin,* supra. For a criminal attempt in violation of General Statutes § 53a-49 (a) (2),[14] as charged in the first count, the defendant, "acting with the kind of mental state required for commission of the crime," must "intentionally [have done] anything which, under the circumstances as he [believed] them to be, [was] an act

---

[14] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

or omission constituting a substantial step in a course of conduct planned to culminate in the commission of the crime." Thus, even as risk of injury was charged in the third count, the offense of attempted sexual assault in the second degree was not included, because each of these crimes contains an element absent from the other.

With respect to whether the risk of injury count as framed included the charge in the second count of sexual assault in the fourth degree, we have previously held that each of these crimes contains an element not to be found in the other. *State* v. *Perruccio,* 192 Conn. 154, 162, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984); *State* v. *Shaw,* 186 Conn. 45, 51–53, 438 A.2d 872 (1982). "The necessary elements of the two statutes are distinct." *State* v. *Perruccio,* supra.

## D

The remaining claims of error in the charge are of no merit and do not warrant extensive review.

The defendant now complains of the failure to include in the charge on criminal attempt liability under § 53a-49 (a) (2) an instruction that, to constitute a "substantial step in a course of conduct planned to culminate in his commission of the crime," the act must be "strongly corroborative of the actor's criminal purpose," as General Statutes § 53a-49 (b)[15] provides. The defendant filed no such request to charge and failed to except to the charge in that respect, although the state did so. We decline further review because of noncompliance with Practice Book § 852 and because the

[15] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. . . .

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose . . . . "

instruction would probably have been superfluous under the evidence in this case of the "substantial step" taken by the defendant against L in achieving his objective. The omitted language from § 53a-49 (b) does not create a separate element of the crime so as to be reviewable in the absence of a seasonable objection in the trial court. See *State* v. *Kurvin,* 186 Conn. 555, 557–58, 442 A.2d 1327 (1982).

The defendant also complains that the court unfairly highlighted the state's evidence in the course of the charge and failed to mention the evidence he presented. No such claim of tilting the charge in favor of the state was raised at trial, although the defendant did claim that the court had recited L's testimony on three occasions as if it "were presumed to be true" and that at one point, the court had "indicated that those are acts constant [sic] with the risk of injury statute." The claims that were specifically the subject of an exception by the defendant have not been briefed and must be regarded as abandoned. *Chaplin* v. *Balkus,* 189 Conn. 445, 447, 456 A.2d 286 (1983).

We have, nevertheless, reviewed the charge and find no merit in the defendant's claim that it was partial toward the state. The court quite properly referred to L's testimony several times in order to assist the jury in relating the statutes involved to the evidence. Several times the court cautioned the jury that its references to the testimony were only for the purpose of explaining the application of the rules of law. The court referred to the defendant by name several times, pointing out that he was "entitled to a fair and careful consideration of his testimony" and that "[h]e rightfully expects fair and just treatment at your hands." The claim of partiality is virtually frivolous.

## VI

The defendant's remaining claim of prosecutorial misconduct we find to be without merit. The defendant bases this claim upon references by the state's attorney during his argument to the jury to such factors as lack of sophistication on the part of L and Y, the defendant's admission that he had drunk four glasses of vodka before the incident, what he had to lose by telling the truth as compared with the interest of the girls, and similar allusions to the comparative credibility of the defendant and the two girls based upon the evidence introduced. None of these references exceeds the bounds of fair argument because none can reasonably be viewed as an allusion "to any matter that the lawyer does not reasonably believe is relevant or that [was not] supported by admissible evidence," an assertion of "personal knowledge of facts in issue" or a statement of "a personal opinion as to the justness of a cause, the credibility of a witness . . . or the guilt or innocence of an accused . . . ." Rules of Professional Conduct, Rule 3.4 (e).

At one point, however, the prosecutor arguably came close to transgressing Rule 3.4 (e) of the Rules of Professional Conduct by stating: "I would submit that when those girls took the stand, they told the truth." Standing alone the statement would appear to be an expression of "a personal opinion as to the credibility of a witness." It was made, however, as the final sentence in a portion of the state's rebuttal argument in response to the defendant's argument that L and Y had rehearsed their testimony by talking to the prosecutor and others. The state's attorney conceded that he had talked to L and other witnesses before they testified but then referred to the tape recording made of L's account of the incident a short time after it had

occurred, arguing that its consistency with her testimony at trial corroborated everything "so neatly" and that "the best way to tie all the loose ends up and to make everything sound the way it fits is to tell the truth." The argument continued: "Isn't that right? The best way to make everything sound the way it is is to tell the truth. *I would submit that when those girls took the stand they told the truth.*" (Emphasis added.) Viewed in this context, the italicized statement was not an expression of personal opinion upon credibility but a contention that the testimony of L and Y was truthful because it was corroborated by the other evidence in the case.

In any event, the defendant made no claim of prosecutorial misconduct at trial nor did he object to any portion of the state's summation. Even if there had been a violation of Rule 3.4 (e), in this case it could not reasonably have had any significant effect on the verdict or have risen to the level of a violation of the defendant's constitutional right to a fair trial. Cf. *State* v. *Couture,* 194 Conn. 530, 560–65, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). Accordingly, no further review of this claim is warranted. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

There is no error.

In this opinion the other justices concurred.