## No. 27624

## The People of the State of Colorado v. Richard Lee Cunningham

(570 P.2d 1086)

Decided October 24, 1977.　　　　　　　　　Rehearing denied November 15, 1977.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Sharon S. Metcalf, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Gene Beville, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The defendant was convicted by a jury of first-degree murder[1] and first-degree kidnapping,[2] and sentenced to two concurrent life sentences. We affirm.

---

[1] The defendant was convicted under the felony murder statute, section 18-3-102(1)(b), C.R.S. 1973.

[2] Section 18-3-301, C.R.S. 1973.

Five-year-old Gloria Pinter disappeared September 26, 1975, on her way home from kindergarten. Later that day, Mrs. Pinter received a telephone call demanding ransom for Gloria's safe return. After police were notified, subsequent ransom calls were recorded. Voice print analysis indicated that the defendant had made the calls.

Police officers staked out the drop site where Mrs. Pinter had been directed to leave the ransom. After several hours of waiting on a cold night the police observed the defendant and a friend, Andy Torres, descending from a tree about sixty feet from where the ransom had been thrown. A search of the defendant produced a slip of paper on which the Pinters' phone number had been written and a key to a motel unit where Gloria's body eventually was found. Torres later convinced police of his innocence and was released.

When the Pinters learned that Torres and Cunningham had been arrested, James Pinter (Gloria's brother) gave the location of a motel room to which he said Torres had access. Police searched the unit but did not find Gloria.

In a statement to police, which the trial court suppressed for procedural irregularities, the defendant gave the address of the same motel previously mentioned by James Pinter. Police then searched the motel unit again, this time discovering Gloria's body, hidden under a dresser. Gloria had suffocated on vomit, probably caused by brain concussions from blows to the head. At this time police also seized a wrench believed to be the murder weapon and a Coke bottle upon which the defendant's fingerprints were found.

Police again interrogated the defendant. This time he admitted his involvement in the kidnapping, but blamed others, including James Pinter, as the primary actors. He denied knowing about Gloria's death before police informed him of it, and denied ever striking Gloria. He asserted that he had gone to the motel during the afternoon, had seen that Gloria was sick, and had held her head under the water faucet.

On September 28, two days after Gloria had disappeared, police interviewed five-year-old Lisa Brown. Lisa stated that on the day Gloria disappeared a man had been waiting at the school and had told Gloria to come with him because "her brother was waiting." When asked to pick, from among five photographs, "the man who talked to Gloria Sue after school," Lisa chose the defendant's picture. Later the pictures were rearranged and Lisa was asked if she could find "the man in the pictures."

She chose a photograph of another man which was in the position the defendant's picture had occupied the first time. Asked if this photo showed the man who had been speaking to Gloria at school, Lisa responded, "Do you want me to point to the man that was talking to Gloria at school?" She then pointed to the defendant's picture.

On September 29, police interrogated James Pinter, who was accompanied by his uncle. They were given *Miranda* warnings, but proceeded without an attorney. Pinter stated that the defendant had taken Gloria to the motel unit and had struck her with a wrench when she cried. At trial, Pinter denied any involvement in the kidnapping, whereupon his prior statement to police was admitted, over the defendant's objection, for impeachment purposes.

## I.

The defendant first contends that part of the first-degree kidnapping statute, section 18-3-301(2), C.R.S. 1973, is unconstitutional because it does not provide for the affirmative defense of disengagement which is available under the first-degree felony murder statute, section 18-3-102(2), C.R.S. 1973. He argues that his assertion of the affirmative defense to felony murder would implicate him in the kidnapping, and thus assure him of conviction of another class one felony, first-degree kidnapping. He maintains that this violates his right to defend himself as guaranteed by the Fourteenth Amendment and has a "chilling effect" on his right not to testify against himself as guaranteed by the Fifth Amendment. At a hearing on his motion to this effect, the defendant made an offer of proof that he would take the stand and testify as to the affirmative defense to felony murder, were it not for the challenged statutory scheme.

As alternatives to declaring the kidnapping statute unconstitutional, the defendant moved that the trial court dismiss the kidnapping indictment, or order the People to elect to proceed under only one count of the indictment. The trial court denied these motions.

The defendant apparently does not assert that the first-degree kidnapping statute is unconstitutional *on its face*, since the situation of which he complains could not arise in a trial solely for kidnapping. Rather, the essence of the defendant's argument is that it is unconstitutional to try the felony murder and first-degree kidnapping charges *together* under the current statutory scheme. We do not agree. We considered and rejected the same argument in *People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976) and that case is controlling here. *See also, People v. Walker*, 189 Colo. 545, 542 P.2d 1283 (1975).

## II.

The defendant next asserts that the trial court erred in its rulings on two of his motions to suppress evidence.

First, the court refused to suppress the evidence found in the motel unit, consisting of the child's body, the wrench, and the defendant's

fingerprints on a Coke bottle. The defendant's first statement to police, in which he gave the motel's address, was suppressed because he had not been advised of his rights prior to that statement. However, the trial court found that the evidence discovered at the motel had a source independent of the unlawfully obtained statement. This finding is amply supported by the record. James Pinter had provided police with the motel's address as soon as he learned that the defendant had been arrested, and police, in a lawful search incident to his arrest, had taken the motel key from the defendant's pocket. Thus the police clearly had information entirely independent of the defendant's statement to justify the motel search. *See People v. Potter*, 176 Colo. 510, 491 P.2d 974 (1971); *People v. Orf*, 172 Colo. 253, 472 P.2d 123 (1970).

Second, the trial court denied the defendant's motion to suppress the slip of paper containing the Pinter phone number and the motel room key, both of which had been found on the defendant at the time of his arrest. The defendant claims that the police did not have probable cause to arrest him, and therefore the search incident to his arrest was unlawful.

A warrantless search is valid if at the time of the search the officer has probable cause to arrest. *People v. Noreen*, 181 Colo. 327, 509 P.2d 313 (1973); *People v. Bueno*, 173 Colo. 69, 475 P.2d 702 (1970). Here the arresting officers maintained surveillance of the ransom drop site for over two and one-half hours on a cold night. Shortly after midnight, the two youths descended from a tree near the ransom money. They were scantily dressed for the cold weather. Obviously they had been in the tree since before the officers had arrived. These circumstances clearly gave the officers probable cause to believe that the defendant had committed, or was involved in, the kidnapping. *See, e.g., People v. Mojo*, 173 Colo. 422, 480 P.2d 571 (1971); *People v. Lujan*, 173 Colo. 77, 475 P.2d 700 (1970); *People v. Collman*, 172 Colo. 238, 471 P.2d 421 (1970). Therefore the arrest and ensuing search were invalid, and the evidence thus obtained was properly admitted.

### III.

Although the defendant never testified, he attempted to introduce, through the testimony of a police officer, one of a series of statements he had made to the police. The trial court ruled, after an *in camera* hearing, that the hearsay statement in issue was basically exculpatory, and therefore not admissible under the exception to the hearsay rule which allows admissions *against interest*. The defendant argues that the statement was incriminating and should have been admitted.

Hearsay declarations made by a defendant in his own favor are generally not admissible for the defense.

"A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused could create

evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence." 2 *Wharton's Criminal Evidence* §303(13th Ed., 1972), at 97-98.

The statement at issue was the second one the defendant had made to police officers. Although the statement admitted some involvement in the kidnapping, its primary purpose, both when made and when offered on the defendant's behalf at trial, was to attempt to shift blame to others, and to deny any involvement in the murder. The statement was basically self-serving, and the trial court correctly ruled it inadmissible. *See* 2 *Wharton's Criminal Evidence* §303, *supra.*

## IV.

The defendant next asserts that the trial court erroneously permitted impeachment of James Pinter by use of his prior inconsistent statement.

Because Pinter's mother was extremely distressed by the kidnapping and death of her daughter, Gloria, she.signed a waiver voluntarily transferring custody of James to his uncle. The defendant claims, however, that James Pinter's statement was illegally obtained because the requirements of the Children's Code[3] were not met. Therefore, the defendant contends that the statement was inadmissible.

■ Although it appears that Pinter's uncle was an adequate custodian and representative for the purposes of the Children's Code, we need not decide that issue, because the defendant does not have standing to object to the manner in which the statement was obtained. The Children's Code provides only that statements obtained in violation of its requirements shall not be admissible "against that child." This exclusionary rule was not intended to benefit a defendant whose rights were not violated. *People v. Knapp*, 180 Colo. 280, 505 P.2d 7 (1973).

## V.

The defendant also challenges the trial court's admission of Lisa Brown's testimony on the ground that she was incompetent to be a witness. More specifically, the defendant contends that it was error to admit testimony of Lisa's identification of him in the photographic line-up.

■ The competency of a child witness is to be determined by the trial court, and its ruling will not be reversed absent a clear abuse of

---

[3]Section 19-2-102(3)(c)(I), C.R.S. 1973, provides:
"No statements or admissions of a child made as a result of interrogation of the child by a law enforcement official concerning acts alleged to have been committed by the child which would constitute a crime if committed by an adult shall be admissible in evidence *against that child* unless a parent, guardian, or legal custodian of the child was present at such interrogation and the child and his parent, guardian, or legal custodian were advised of the child's right to remain silent, that any statements made may be used against him in a court of law, the right of the presence of an attorney during such interrogation, and the right to have counsel appointed if so requested at the time of the interrogation; except that, if a public defender or counsel representing the child is present at such interrogation, such statements or admissions may be admissible in evidence even though the child's parent, guardian, or legal custodian was not present." (Emphasis added.)

discretion. *Harris v. People*, 174 Colo. 483, 484 P.2d 1223 (1971). Here the trial court conducted voir dire of Lisa Brown, and specifically found that she understood the nature of the oath and was competent to testify. Nothing in the record contravenes that finding.

The defendant's objection that Lisa could not remember the specific day in question is not well-taken. The child's testimony considered in its totality indicates that although she may not have remembered the specific date on which she saw the defendant with Gloria Pinter, she clearly remembered the incident to which the questions referred.

■ Nor did the trial court abuse its discretion in admitting testimony regarding Lisa's identification of the defendant's photograph. On the second lay-out of the photographs, Lisa exhibited some confusion as to what was desired of her, but picked out the defendant's picture without hesitation when the question was clarified. Given these facts, and the lack of any evidence of suggestiveness or coercion in the identification procedures, the trial court clearly did not abuse its discretion. *See, e.g., People v. Montoya*, 190 Colo. 11, 543 P.2d 514 (1975); *Brown v. People*, 177 Colo. 397, 494 P.2d 587 (1972).

## VI.

■ The defendant's final contention is that the trial court erroneously refused to give the following cautionary instruction:

"One of the witnesses in this case, Lisa Brown, is a child of tender years. You may take her age into account in evaluating her means of knowledge, strength of memory and the reasonableness or unreasonableness of her testimony."

A general instruction on witness credibility was given, and it sufficiently listed the factors for the jury to consider in evaluating all testimony. It was well within the trial court's discretion to refuse the more specific instruction which might have unnecessarily singled out and emphasized a particular portion of the evidence. *Land v. People*, 171 Colo. 114, 465 P.2d 124 (1970).

The trial court's judgment is affirmed.

MR. JUSTICE KELLEY does not participate.