The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 9, 2021

## 2021COA121

**No. 18CA0792, *People v. Vanderpauye* — Evidence — Hearsay — Self-Serving Hearsay — Hearsay Exceptions — Excited Utterance — Relevancy — Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time**

A division of the court of appeals holds that neither the Colorado Rules of Evidence nor the precedents of the Colorado Supreme Court establish a per se rule prohibiting the admission of self-serving hearsay by a criminal defendant. Instead, a criminal defendant's self-serving hearsay is admissible, subject to the principles contained in CRE 403, if, but only if, the statement satisfies a hearsay-rule exception recognized in the Colorado Rules of Evidence.

Court of Appeals No. 18CA0792
Boulder County District Court No. 16CR425
Honorable Bruce Langer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jacob Vanderpauye,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE BERGER
Richman and Welling, JJ., concur

Announced September 9, 2021

Philip J. Weiser, Attorney General, John T. Lee, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Brian Sedaka, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     The dispositive question raised in this appeal is whether Colorado law contains a rule that prohibits the admission of self-serving hearsay statements by a criminal defendant.

¶ 2     Defendant, Jacob Vanderpauye, appeals his conviction for sexual assault (victim physically helpless).  During the alleged sexual assault, and immediately after the victim accused him of rape, Vanderpauye said to the victim: "I thought you said I could do anything to you."  The trial court excluded this statement based on its belief that Colorado law prohibits the admission of self-serving hearsay by criminal defendants, irrespective of whether the hearsay meets one or more of the exceptions contained in the Colorado Rules of Evidence.  The trial court alternatively ruled that the statement was neither an excited utterance nor a statement of Vanderpauye's then-existing state of mind.

¶ 3     We hold that neither the Colorado Rules of Evidence nor the precedents of the Colorado Supreme Court establish a per se rule prohibiting the admission of self-serving hearsay by a criminal defendant.  Instead, a criminal defendant's self-serving hearsay is admissible, subject to the principles contained in CRE 403, if, but

only if, the statement satisfies a hearsay-rule exception recognized in the Colorado Rules of Evidence.

¶ 4    Because Vanderpauye's statement was admissible under one of the established hearsay exceptions contained in the Colorado Rules of Evidence, the trial court erred. This error was not harmless, so we reverse the conviction and remand the case for a new trial. We address some of Vanderpauye's other claims of error because they are likely to recur on retrial.

## I.    Background

¶ 5    Evidence admitted at trial permitted the jury to find the following facts. After a night of heavy drinking with friends, the victim went home with Vanderpauye, engaged in affectionate kissing, and fell asleep on Vanderpauye's bed. When the victim woke up, Vanderpauye was on top of her, having sexual intercourse with her. The victim yelled, "[W]hat are you doing? You're raping me." The parties agree that, in response to this accusation, Vanderpauye said, "I thought you said I could do anything to you." The victim pushed Vanderpauye off her, ran out of the apartment, and returned home.

2

¶ 6    After she returned home, the victim told her friend that she had been raped.  The victim slept for a few hours, and the next morning she told several other friends, her mother, and her aunt that she had been raped.  Shortly afterward, she was examined by a sexual assault nurse examiner and she reported the alleged assault to the police.

¶ 7    The prosecution charged Vanderpauye with three counts:

- sexual assault (causing submission of the victim) under section 18-3-402(1)(a), C.R.S. 2020;

- sexual assault (incapable of appraising) under section 18-3-402(1)(b); and

- sexual assault (victim physically helpless) under section 18-3-402(1)(h).

¶ 8    The prosecution dismissed the sexual assault (causing submission of the victim) charge.  The jury was unable to reach a verdict on the sexual assault (incapable of appraising) charge, and the prosecution dismissed it.  The jury convicted Vanderpauye of sexual assault (victim physically helpless).  The court sentenced Vanderpauye to sex offender intensive supervised probation for a term of twenty years to life.

## II. The Trial Court Reversibly Erred by Excluding Vanderpauye's Self-Serving Hearsay Statement

¶ 9 Vanderpauye argues that the trial court reversibly erred by refusing to admit his hearsay statement, "I thought you said I could do anything to you." We agree.

### A. Additional Facts

¶ 10 The victim told the police that, immediately after she woke up and realized that Vanderpauye was having sexual intercourse with her, she accused him of raping her. She admitted that Vanderpauye immediately responded to her accusation by saying, "I thought you said I could do anything to you."

¶ 11 Vanderpauye moved for an order permitting the jury to hear his statement. He argued that his statement was admissible because, although it was hearsay, it met two exceptions to the hearsay rule — the excited utterance exception in CRE 803(2) and the then-existing state of mind exception in CRE 803(3). Vanderpauye further argued that the second layer of his hearsay statement — the victim's alleged statement "[you can] do anything to [me]," upon which his denial rested — was not being offered for the truth of the matter asserted. Instead, he argued that it was

4

admissible for the nonhearsay purpose of its effect on the listener to show his belief that the victim consented to sexual intercourse.

¶ 12 The trial court first ruled that the statement was inadmissible because it was self-serving hearsay:

> [T]he first threshold that I think I have to cross is whether or not it's self-serving hearsay.
>
> . . . .
>
> And, obviously the concern is that defendants sometimes make things up and paint things in a color that's more beneficial to them. And there's abundant case law that self-serving hearsay is not admissible. It strikes me that this statement falls squarely within that area of concern.

¶ 13 Alternatively, the trial court ruled that the statement was neither an excited utterance nor a statement of Vanderpauye's then-existing state of mind.

> If anything was startling to Mr. Vanderpauye, it was [the victim] either waking up and stopping him or for some other reason stopping him, but what was startling to him, it was not that statement. It was some other event that happened.
>
> Similarly, the state of mind that's relevant to this case is not a state of mind at the time that he made that statement. It would be his state of mind at the time that he engaged in – began, I guess, engaging in this alleged sex act. . . .

> So for all of those reasons, I'm going to find
> that the statement is not admissible.

¶ 14  At trial, the victim testified on direct examination that when she woke up, she "immediately said to [Vanderpauye], what are you doing? You're raping me. I was passed out. You're raping me." She also testified that Vanderpauye "seemed very startled that I woke up" and that "[b]ased off his body language, he seemed surprised." After this testimony, Vanderpauye renewed his proffer of his hearsay statement.

¶ 15  The trial court adhered to its prior ruling, stating that

> regardless of whether it's an excited utterance
> or not, I still find it's self-serving hearsay. . . .
> [T]he analysis that because it's self-serving
> hearsay, it's not inherently reliable, I think
> that that trumps the excited utterance
> exception if it is an excited utterance, but I'm
> not finding it is an excited utterance, so my
> ruling stands.

### B.  Preservation and Standard of Review

¶ 16  The parties agree that Vanderpauye preserved this claim. "We review a trial court's evidentiary rulings for an abuse of discretion." *Campbell v. People,* 2019 CO 66, ¶ 21. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *People v. Baker*, 2021 CO 29, ¶ 29.

6

## C. The Colorado Rules of Evidence Govern the Admissibility of Self-Serving Hearsay

¶ 17    Hearsay is a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  CRE 801(c).  Hearsay is not admissible "except as provided by [the Colorado Rules of Evidence] or by the civil and criminal procedural rules applicable to the courts of Colorado or by any statutes of the State of Colorado."  CRE 802.

¶ 18    In *People v. Cunningham*, the Colorado Supreme Court held, in the context of an admission against interest, that "[h]earsay declarations made by a defendant in his own favor are generally not admissible for the defense.  'A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness.'"  194 Colo. 198, 202-03, 570 P.2d 1086, 1089 (1977) (quoting 2 Charles E. Torcia, *Wharton's Criminal Evidence* § 303, at 97-98 (13th ed. 1972)).

¶ 19    In *Cunningham*, the defendant was charged with murder and kidnapping.  *Id.* at 200, 570 P.2d at 1087.  He sought to admit his hearsay statement that admitted involvement in the kidnapping but denied involvement in the murder.  *Id.* at 203, 570 P.2d at 1089.

The supreme court upheld the trial court's exclusion of the statement, concluding that "its primary purpose, both when made and when offered on the defendant's behalf at trial, was to attempt to shift blame to others, and to deny any involvement in the murder." *Id.*

¶ 20    Based on *Cunningham* and later court of appeals decisions following it, the Attorney General argues that "a defendant's self-serving hearsay declarations should be excluded when there is nothing to guarantee trustworthiness." We reject the Attorney General's position for several reasons.

¶ 21    First, the Colorado Rules of Evidence, promulgated by the supreme court after it decided *Cunningham*, do not contain any rule against the admission of self-serving hearsay by a criminal defendant.[1] "When the Colorado Supreme Court exercises its constitutional authority and adopts a rule of procedure or evidence that conflicts with an earlier opinion of that court, the later

---

[1] *Cunningham* was decided in 1977. The Colorado Rules of Evidence became effective on January 1, 1980. *See People v. Ramirez*, 155 P.3d 371, 375 (Colo. 2007).

precedent or rule controls, not the former." *People v. Gonzales*, 2019 COA 30, ¶ 19, *aff'd*, 2020 CO 71.

¶ 22    Second, in a case decided after both *Cunningham* and the effective date of the Colorado Rules of Evidence, the supreme court authorized the admission of a self-serving hearsay statement by a criminal defendant, without subjecting the statement to the purported rule against the admission of self-serving hearsay. *King v. People*, 785 P.2d 596, 600-03 (Colo. 1990).

¶ 23    In *King*, the defendant moved to admit hearsay statements that he made to his psychiatrist. *Id.* at 599. The trial court did not consider whether the statements were admissible under CRE 803(4) as statements for the purposes of diagnosis and treatment, instead ruling that the statements were inadmissible because they were self-serving. *Id.* Without addressing the purported rule against the admission of self-serving hearsay, the supreme court held that the proffered statement met the requirements of CRE 803(4) and was therefore admissible. *Id.* at 603. The court reasoned that the hearsay exceptions in CRE 803 were themselves predicated on considerations of trustworthiness, so if a hearsay statement met the

requirements of the exception, it was admissible "without regard to any independent demonstration of trustworthiness." *Id.*

¶ 24 This court's opinion in *People v. Pack*, 797 P.2d 774, 775-76 (Colo. App. 1990), is consistent both with *King* and with our analysis here. There, a division of this court held that a criminal defendant's excited utterance was admissible under CRE 803(2) notwithstanding that it was a self-serving statement. *Pack*, 797 P.2d at 776. It distinguished *Cunningham* on the basis that the defendant there did not argue that his statement was admissible as an excited utterance under CRE 803(2).[2] *Pack*, 797 P.2d at 775.

¶ 25 We acknowledge that supreme court case law explains that the self-serving nature of a statement against interest is relevant to the admissibility analysis under CRE 804(b)(3).[3] *See Nicholls v. People*,

---

[2] To the extent that other divisions of this court have cited *Cunningham* for the proposition that self-serving hearsay is inadmissible even if it fits within an exception recognized by the Colorado Rules of Evidence, they have done so without much analysis. *See, e.g., People v. Abeyta*, 728 P.2d 327, 331 (Colo. App. 1986). More importantly, those cases are inconsistent with the most recent supreme court case law, and we decline to follow them. We are not bound by the decision of another division of this court. *Campbell v. People*, 2020 CO 49, ¶ 41.

[3] An inculpatory statement by a criminal defendant is not hearsay at all under CRE 801(d).

2017 CO 71, ¶¶ 44-45. But nothing in *Nicholls*, or other supreme court precedent decided after the promulgation of the Colorado Rules of Evidence, creates an independent impediment to the admission of self-serving hearsay. *See King*, 785 P.2d at 603.

¶ 26 A review of case law from other jurisdictions supports our analysis. A majority of other state courts have concluded that "no general rule of evidence excludes statements merely because they are self[-]serving." *State v. Vandenburg*, No. M2017-01882-CCA-R3-CD, 2019 WL 3720892, at *46 (Tenn. Crim. App. Aug. 8, 2019) (citation omitted) (*appeal denied* Jan. 15, 2020); *see also Williams v. State*, 915 P.2d 371, 378-79 (Okla. Crim. App. 1996); *Swain v. Citizens & S. Bank of Albany*, 372 S.E.2d 423, 425 (Ga. 1988) ("'[S]elf-serving' does not describe an independent ground of objection.") (citation omitted). *But see Calloway v. State*, 210 So. 3d 1160, 1183 (Fla. 2017) (holding that self-serving hearsay statements are generally inadmissible subject to the rule of completeness).

¶ 27 The United States Court of Appeals for the Seventh Circuit has further explained that "a flat rule of exclusion of declarations of a party on the grounds that they may be described as 'self-serving'

even though otherwise free from objection under the hearsay rule and its exceptions, detracts from the fund of relevant information which should be available to the jury." *United States v. Dellinger*, 472 F.2d 340, 381 (7th Cir. 1972).

¶ 28    Learned treatises also support our analysis.  One treatise has recognized that "[i]f a statement with a self-serving aspect falls within an exception to the hearsay rule, the judgment underlying the exception that the assurances of trustworthiness outweigh the dangers inherent in hearsay should be taken as controlling, and the declaration should be admitted despite its self-serving aspects."  2 Kenneth S. Broun et al., *McCormick on Evidence* § 270, Westlaw (8th ed. database updated Jan. 2020).  Discussing self-serving statements that meet the requirements of Fed. R. Evid. 803(3), another treatise explains that concerns about candor alone do not justify excluding such statements because "the possibility that factfinders will be misled, or fail to appreciate the possibility that they are false or exaggerated, seems remote."  4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* §§ 8:70-8:71, Westlaw (4th ed. database updated May 2021).

¶ 29     For these reasons, we conclude that Colorado law does not contain any bar, separate from the provisions of the Colorado Rules of Evidence, to the admission of self-serving hearsay statements by a criminal defendant. Accordingly, if the proffered statement meets an exception to the hearsay rule, it may be admitted, subject to the provisions of CRE 403.[4] It follows that the trial court erred as a matter of law when it relied on this nonexistent evidentiary rule to exclude Vanderpauye's self-serving statement.

¶ 30     That conclusion, however, does not end our inquiry. The question remains whether Vanderpauye's statement was admissible under the Colorado Rules of Evidence. On this record, the answer is yes.

---

[4] The substance of the statement, including any self-serving nature, could be a proper factor for a trial court to consider in exercising its discretion to exclude such a statement under CRE 403. But the self-serving nature of the hearsay statement is not sufficient, by itself, to justify exclusion. *Cf. People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) (recognizing that the exclusion of cumulative evidence that would have "materially assisted" the defendant's case could violate the defendant's constitutional right to present a defense).

### D. Vanderpauye's Hearsay Statement was Admissible as an Excited Utterance Under CRE 803(2)

¶ 31    An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2). There are three requirements for admissibility under this exception:

> (1) the event must be sufficiently startling to render normal reflective thought processes of the observer inoperative; (2) the statement must be a spontaneous reaction to the occurrence; and (3) direct or circumstantial evidence must exist to allow the jury to infer that the declarant had the opportunity to observe the startling event.

*People v. Martinez*, 83 P.3d 1174, 1177 (Colo. App. 2003).

¶ 32    Under the first requirement for the admission of an excited utterance, the *event* that triggers the hearsay statement — not the *statement* itself — must be startling. The trial court ruled that Vanderpauye's statement was not an excited utterance because "[i]f anything was startling to Mr. Vanderpauye, it was [the victim] either waking up and stopping him or for some other reason stopping him, but what was startling to him, it was not that statement." To the extent the trial court ruled that Vanderpauye's statement was not an excited utterance because the *statement* itself was not startling,

the trial court misapplied the law. A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. *People v. Voth*, 2013 CO 61, ¶ 15.

¶ 33  If, instead, the court was referring to the victim's statement, we reject the court's conclusion that the victim's accusation of rape was not startling. The Attorney General argues that Vanderpauye's word choice suggests a considered and self-serving planned response. However, the victim herself testified that Vanderpauye seemed startled and surprised when she woke up and accused him of raping her. This established that the event was sufficiently startling to render inoperative Vanderpauye's normal reflective thought process for purposes of admission under CRE 803(2). (Of course, whether Vanderpauye's statement was credible or was made solely to exculpate himself was exclusively for the jury to determine. *See People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983).)

¶ 34  The victim's own statement to the police that Vanderpauye immediately responded to her accusation by saying, "I thought you said I could do anything to you" established that the statement was a spontaneous reaction to the event. Finally, the undisputed evidence established that Vanderpauye observed the startling event

15

of the victim waking up and accusing him of rape. Accordingly, the record establishes that all requirements for the admission of an excited utterance were satisfied.[5] The trial court abused its discretion by concluding otherwise.[6]

### E. The Victim's Alleged Statement Contained Within Vanderpauye's Excited Utterance Was Not Hearsay

¶ 35 The Attorney General argues that Vanderpauye's statement was nonetheless inadmissible because it contained a second layer of hearsay — the victim's alleged statement "[you can] do anything to [me]." We reject this argument because the victim's alleged statement was not hearsay.

¶ 36 Words that carry legal consequences or logical significance independent of the assertive content of the words are not hearsay. 4 Mueller & Kirkpatrick, § 8:18. In a related context, the United

---

[5] Because we conclude that this statement met the requirements for admission as an excited utterance under CRE 803(2), it is unnecessary for us to analyze whether it also was admissible as a statement of Vanderpauye's then-existing state of mind under CRE 803(3).

[6] The rule of completeness codified in CRE 106 might provide an independent basis for the admission of Vanderpauye's statement. But Vanderpauye did not, either in the trial court or here, make that argument. Respecting the party presentation principle, we do not further address the rule of completeness. *See Galvan v. People*, 2020 CO 82, ¶ 45.

States Court of Appeals for the Seventh Circuit held that statements that a defendant consented to a search of her person or belongings were admissible nonhearsay because the statements had legal significance independent of the assertive content of the words. *United States v. Moreno*, 233 F.3d 937, 940 (7th Cir. 2000); *see also State v. Cotton*, 353 P.3d 472 (Kan. Ct. App. 2015) (per curiam) (unpublished table decision).

¶ 37     We likewise conclude that in a prosecution for sexual assault, at least under section 18-3-402(1)(h) where one of the elements of the offense is that the victim did not consent, statements that grant or withhold consent to sexual intercourse are legally significant independent of the assertive content of the words.[7]  Accordingly, the victim's alleged statement "[you can] do anything to [me]" was admissible as nonhearsay because it had independent legal significance apart from the truth of the matter asserted.

---

[7] We note that lack of consent is not an element of other types of sexual assault.  *See* § 18-3-402(1)(a), (b), C.R.S. 2020.  But under the plain language of section 18-3-402(1)(h), lack of consent is an element that the prosecution must prove beyond a reasonable doubt.

### F. The Error was Not Harmless

We next address whether the error requires reversal. On this record, we hold that it does.

We review nonconstitutional trial errors that were preserved by objection for harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. On harmless error review, we "will reverse the judgment of conviction if there is a reasonable probability that any error by the trial court contributed to [the defendant's] conviction." *People v. Monroe*, 2020 CO 67, ¶ 17. Whether an error is harmless depends on "the overall strength of the state's case, the impact of the improperly admitted or excluded evidence on the trier of fact, whether the proffered evidence was cumulative, and the presence of other evidence corroborating or contradicting the point for which the evidence was offered." *People v. Casias*, 2012 COA 117, ¶ 64 (quoting *State v. Martin V.*, 926 A.2d 49, 54 (Conn. App. Ct. 2007)).

### 1. The Prosecution was Required to Prove Beyond a Reasonable Doubt that the Victim Had Not Consented

The Attorney General argues that any error in refusing to admit this evidence was harmless because Vanderpauye's "statement that [the victim] said he could do whatever he wanted to

18

her at some point before she fell asleep, did not, on its own terms, establish that she consented to intercourse when she was asleep." This argument misses the mark.

¶ 41    Vanderpauye was convicted of sexual assault (victim physically helpless) under section 18-3-402(1)(h). To convict a defendant of sexual assault under this subsection, the prosecution must prove the following elements beyond a reasonable doubt:

- "The victim is physically helpless"; and

- "the actor knows the victim is physically helpless"; *and*

- "the victim has not consented."

*Id.*

¶ 42    Because the victim's lack of consent is an element of the charge for which Vanderpauye was convicted, whether the victim consented to sexual intercourse, the extent and substance of that consent, and whether the victim was, in fact, asleep during the incident were all critical factual determinations for the jury. *See Dunton v. People*, 898 P.2d 571, 573 (Colo. 1995). Vanderpauye's statement was directly relevant to these factual determinations.

## 2.    Misleading Silence

¶ 43    The exclusion of Vanderpauye's statement was harmful for an additional and independent reason.  The trial court permitted the victim to testify that she accused Vanderpauye of raping her but prohibited the jury from hearing that Vanderpauye immediately denied the accusation.  This omission created the misleading impression that Vanderpauye was silent in the face of an accusation of criminal conduct and was therefore guilty.

¶ 44    The United States Supreme Court has recognized that "[s]ilence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation." *United States v. Hale*, 422 U.S. 171, 176 (1975).  The Colorado Supreme Court likewise has recognized that the "failure to deny an accusation, when the statement is heard and understood by an accused and could have been denied by him without emotional or physical impediment, is admissible as an adoptive admission." *People v. Quintana*, 665 P.2d 605, 610 (Colo. 1983).

¶ 45    In *People v. Short*, this court recognized that the exclusion of a defendant's denial of wrongdoing allowed the prosecution to present

20

a misleading picture and could warrant reversal for a new trial. 2018 COA 47, ¶¶ 58-59.

¶ 46     Despite this misleading impression, the Attorney General argues that any error was harmless because Vanderpauye's statement, "I thought you said I could do anything to you," was cumulative of the evidence that the victim had abrasions on her knees.  This argument distorts the definition of cumulative.

¶ 47     Evidence that is "decidedly different in character and impact" is not cumulative.  *People v. Genrich*, 2019 COA 132M, ¶ 117 (Berger, J., specially concurring).

¶ 48     True, Vanderpauye argued that the physical evidence of the abrasions to the victim's knees supported his defense of consent because that type of injury was more consistent with consensual sexual behavior.  However, this circumstantial evidence of consent was "decidedly different in character and impact" than Vanderpauye's statement, which was direct evidence of consent. Accordingly, the omitted evidence was not cumulative.  Even if this evidence were cumulative, the supreme court has held that evidence, even cumulative evidence, that "may corroborate the

21

defendant's own statement should ordinarily be admitted." *People v. Melendez*, 102 P.3d 315, 320 (Colo. 2004).

¶ 49    We also reject the Attorney General's argument that the "jury would not have credited [Vanderpauye's] self-serving hearsay statement." Maybe so. But the "determination of the credibility of witnesses is solely within the province of the jury." *Gonzales*, 666 P.2d at 128. We cannot say what weight the jury would have given the evidence. Viewing the evidence as a whole, there is a reasonable probability that Vanderpauye's statement could have affected the jury's verdict.

¶ 50    For all these reasons, we reverse the judgment of conviction and remand for a new trial.

### III.    Errors Likely to Recur on Retrial

¶ 51    Although we reverse based upon the trial court's erroneous exclusion of Vanderpauye's hearsay statement, we address Vanderpauye's other claims of error to the extent they are likely to arise on retrial.[8]

---

[8] We don't address whether the trial court erred by excluding blood alcohol extrapolation testimony because the principal basis for its exclusion — that Vanderpauye violated Crim. P. 16's expert

A.     Cold Expert Testimony[9]

¶ 52     Vanderpauye challenges the trial court's admission of cold

expert testimony about sexual assault dynamics.

1.     The Trial Court Did Not Abuse its Discretion by Denying
Vanderpauye's Request for a *Shreck* Hearing

¶ 53     Vanderpauye argues that he was entitled to a *Shreck* hearing

to determine whether Jean McAllister's proposed testimony was

reliable.  We disagree.

¶ 54     Vanderpauye requested a hearing under *People v. Shreck*, 22

P.3d 68, 77 (Colo. 2001), regarding the endorsed cold expert.  The

trial court made the necessary CRE 702 findings without a hearing.

---

disclosure requirements — presumably will not recur at a retrial.
We likewise decline to address Vanderpauye's argument that the
trial court reversibly erred by allowing multiple witnesses to recount
the victim's account of the incident and emotional reaction because
on retrial Vanderpauye's hearsay statement will likely be admitted,
and we are confident that the trial court will properly exercise its
discretion under CRE 403.

[9] In *People v. Cooper*, 2019 COA 21, ¶ 2 (*cert. granted* Mar. 2, 2020),
a division of this court defined the term "blind expert" as
synonymous with the term "cold expert."  Most of the published
cases addressing this concept and virtually all law review articles
addressing the concept use the term "blind expert."  However, the
term "blind expert" is neither particularly nor accurately descriptive
of the concept.  Some may find the term to be offensive.  As a result,
we use the term "cold expert" throughout this opinion.

23

¶ 55　　The trial court's decision to hold or dispense with a *Shreck* hearing is reviewed for an abuse of discretion. *People v. Rector*, 248 P.3d 1196, 1201 (Colo. 2011). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Baker*, ¶ 29. A trial court need not hold a *Shreck* hearing "provided it has before it sufficient information to make specific findings under CRE 403 and CRE 702 about the reliability of the scientific principles involved, the expert's qualification to testify to such matters, the helpfulness to the jury, and potential prejudice." *Rector*, 248 P.3d at 1201.

¶ 56　　The trial court's denial of Vanderpauye's request for a *Shreck* hearing was based on Vanderpauye's motion, the prosecution's response, and an amended expert endorsement (which included the expert's curriculum vitae and an amended summary expert report).

¶ 57　　Numerous Colorado appellate courts have recognized the value and upheld the reliability of cold expert testimony regarding the nonintuitive reactions of victims in sexual assault cases. *See, e.g.*, *Venalonzo v. People*, 2017 CO 9, ¶¶ 32-34. Therefore, the trial court did not abuse its discretion in refusing a *Shreck* hearing on the question of whether such evidence was sufficiently reliable.

## 2. Cold Expert Testimony that Sexual Assault is Not a Mistake or a Miscommunication Must be Excluded on Retrial

¶ 58    Vanderpauye also argues that the entirety of McAllister's testimony was irrelevant, was unfairly prejudicial, and should have been excluded.

¶ 59    Relevant cold expert testimony gives jurors information necessary to understand what might otherwise seem to be counterintuitive actions by the victims of sexual assaults. *People v. Relaford*, 2016 COA 99, ¶ 30. But there are two substantial risks associated with the admission of cold expert testimony. *People v. Cooper*, 2019 COA 21, ¶ 19 (*cert. granted* Mar. 2, 2020).

¶ 60    The first is that "most, if not all, expert testimony has the tendency to bolster the credibility of one or more witnesses." *Id.*; *Venalonzo*, ¶¶ 32, 36. While expert testimony "may incidentally give rise to an inference that a victim is or is not telling the truth about the specific incident," "this fact alone is insufficient to deny admission of the evidence, because expert testimony generally tends to bolster or attack the credibility of another witness." *People v. Koon*, 724 P.2d 1367, 1370 (Colo. App. 1986). Nonetheless, witnesses may not directly or indirectly testify about the

25

truthfulness of another witness. *See People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009).

¶ 61    The second risk is that "the jury may find or infer that historical facts existed based solely on the expert's testimony, rather than on the historical evidence presented to the jury." *Cooper*, ¶ 21. Accordingly, "expert testimony is only admissible when the proffered testimony 'fits' the factual issues involved in the case." *Id.* at ¶ 25 (quoting *People v. Martinez*, 74 P.3d 316, 323 (Colo. 2003)).

¶ 62    Here, the cold expert testified that it was a "myth" that "sexual assault is somehow a mistake or miscommunication." This testimony went well beyond opinions regarding the typical responses of sexual assault victims.

¶ 63    This opinion must be excluded if again offered on retrial for two reasons. First, the statement appears to be demonstrably untrue. There are obvious circumstances when a defendant is criminally liable for sexual assault resulting from a miscommunication. For example, sexual intercourse with a person under the age of consent constitutes a crime regardless of whether

the defendant knew that the victim was under the age of consent. *See* § 18-3-402(1)(d).

¶ 64 Second, as we see it, the only purpose of the expert's opinion in this regard was to buttress the credibility of the victim, an improper basis for the admission of expert testimony. *See Wittrein*, 221 P.3d at 1081.

¶ 65 On retrial, the court must, on timely objection, limit the expert testimony to opinions that do not improperly bolster the credibility of any witness and that "fit" the facts supported by evidence admitted at trial.

### B. The Trial Court Did Not Abuse its Discretion by Refusing Vanderpauye's Tendered Intoxication Instruction

¶ 66 Vanderpauye argues that the trial court reversibly erred by refusing to give his tendered intoxication instruction. We disagree.

¶ 67 Defense counsel tendered the following instruction:

> The court admitted certain evidence for a limited purpose.
>
> In this case evidence of [the victim]'s intoxication has been admitted for the purpose of her credibility and ability to make observations.
>
> The prosecution has not and is not alleging that [the victim] was physically helpless or

> incapable of appraising the nature of her own conduct due to intoxication.
>
> You are instructed that you cannot consider evidence of [the victim]'s intoxication except for the limited purpose described above.

The trial court refused to give the tendered instruction.

¶ 68    A trial court has substantial discretion in formulating jury instructions if "they are correct statements of the law and fairly and adequately cover the issues presented." *People v. Nerud*, 2015 COA 27, ¶ 35 (quoting *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo. App. 2009)). "[A] trial court may refuse an instruction if it is argumentative, unduly emphasizes particular evidence, or contains statements not supported by the evidence." *People v. Baird*, 66 P.3d 183, 194 (Colo. App. 2002). We review a trial court's decision to give, or not to give, a particular jury instruction for an abuse of discretion. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011).

¶ 69    The trial court correctly instructed the jury on the elements of the offenses. Moreover, the tendered instruction was argumentative

and confusing. Therefore, the trial court did not abuse its discretion by refusing Vanderpauye's tendered instruction.[10]

### C. Evidence that Vanderpauye Lied About His Age

¶ 70 Vanderpauye contends that evidence that he lied about his age was irrelevant. We don't address this contention because on retrial Vanderpauye's hearsay statement will likely be admitted, bringing CRE 806 into play regarding impeachment.

## IV. Cumulative Error

¶ 71 Because we have determined that the exclusion of Vanderpauye's statement constituted reversible error, we need not and do not consider his argument of cumulative error.

## V. Conclusion

¶ 72 The judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE RICHMAN and JUDGE WELLING concur.

---

[10] Vanderpauye's argument that this instruction was a theory of the case instruction was raised for the first time in the reply brief. We do not address issues raised for the first time in a reply brief. *People v. Plemmons,* 2021 COA 10, ¶ 9 n.1. Accordingly, we do not address this argument.