22CA0852 Peo v Dejesus 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0852
Montezuma County District Court No. 21CR104
Honorable Christopher J. Munch, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ramon Alberto Dejesus III,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Ramon Alberto Dejesus III, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession with intent to distribute a controlled substance.  We reverse and remand for a new trial.

## I.     Background

¶ 2     Dejesus was charged with possession with intent to manufacture or distribute a schedule I or II controlled substance, introducing contraband in the first degree, and three habitual criminal counts.

¶ 3     According to the evidence presented at trial, Deputy Smith was on patrol looking for a woman who had pending warrants for her arrest.  The deputy went to a trailer park in search of the woman.  He saw Dejesus with another man working together on a motorcycle.  Deputy Smith checked the men for active warrants and found one for Dejesus.  Deputy Smith placed Dejesus under arrest.  He then searched Dejesus for weapons and contraband.

¶ 4     The search was recorded on Deputy Smith's body camera (bodycam), and the recording was admitted at trial as "Defendant's Exhibit A" and played for the jury without any audio.  The bodycam footage depicted Deputy Smith searching Dejesus, who was wearing

sweatpants over a pair of basketball shorts. As reflected in the video, Deputy Smith testified that he patted, pinched, and grasped the outside Dejesus's pant pockets to see if he could feel anything, and, when he did, he reached into the pockets and removed the items. During the search, Deputy Smith found cash and a smart phone in Dejesus's left-side pant pocket and a torch lighter in his right-side pant pocket. However, Deputy Smith did not locate any contraband or weapons.

¶ 5        After the search, Deputy Smith transported Dejesus to the jail to book him in on the active warrant. On the way, Deputy Smith testified that they stopped because Dejesus was complaining his handcuffs were too tight. Upon arrival at the jail, Deputy Smith removed Dejesus from the police car. Deputy Smith conducted a second search, which was also recorded on his bodycam.

¶ 6        The bodycam footage of the second search was admitted at trial as "People's Exhibit 2" and played for the jury with a very brief snippet of audio that was selected by the prosecution. It depicted Deputy Smith quickly searching Dejesus's sweatpants as well as the basketball shorts Dejesus was wearing underneath his sweatpants, and immediately locating a large baggie of

2

methamphetamine in the right-side pocket of his basketball shorts. Thereafter, Dejesus entered the jail and was searched by a second deputy, who found five additional smaller baggies of methamphetamine. This search was only partially visible on People's Exhibit 2 because the second deputy's bodycam was "bumped" during the search and turned off. However, the second deputy testified that the drugs were found in the left-side pocket of Dejesus's basketball shorts.

¶ 7 Before trial, the parties litigated the admissibility of Dejesus's statements on People's Exhibit 2. The prosecution filed a motion objecting to "any self-serving hearsay statements of [Dejesus] including but not limited to any statements suggesting someone else placed the drugs in his pockets." In a written response, defense counsel argued that under *People v. Vanderpauye*, 2021 COA 121, there was no "per se" rule that self-serving hearsay was inadmissible. And, under the circumstances presented here, the prosecution's attempt "to manipulate their evidence so as to eliminate a certain statement of [Dejesus]" would "provide the misleading impression that [he] did not contemporaneously disclaim knowledge or possession of the methamphetamine at

3

issue." Defense counsel asserted that, under CRE 106, if the district court permitted the prosecution to play a redacted version of People's Exhibit 2, the defense would be entitled to play portions of the video "including [Dejesus's] own statements, necessary to correct any misleading impression." In a written order, the court instructed the parties to be prepared to address the matter on the morning of trial.

¶ 8     On the morning of trial, defense counsel described the content of People's Exhibit 2 for the court:

> The body cam starts, it's a close-up of [Dejesus's] pockets, the search has just begun, the deputy goes through, finds what he believes to be contraband.
>
> [Dejesus] is pretty immediate in his reaction on the body cam video. He says something like, "Oh, no, no, no, no, no," like when he starts to find the contraband.
>
> He asks Deputy Smith, I believe, a series of questions to the effect of "did you ever see me go through my pockets," asserts that a couple of times, I believe, as well.

¶ 9     Defense counsel continued, "I mean, it is clear [Dejesus] is pretty fervently denying pretty much the entire time on the video

4

that the contraband is his." The prosecutor agreed that this was a good summary of People's Exhibit 2.

¶ 10    When the district court asked if it was the prosecution's intention to play the video "without the audio," the prosecutor explained that he intended to have "little snippets of audio" that were not statements by Dejesus but statements that were "need[ed] as substantive evidence." For example, the prosecutor explained that he intended to include Deputy Smith's question, "Do you have anything else on you?" after the first bag of methamphetamine was found on Dejesus in the sally port of the jail, but before Dejesus was searched inside the jail by the second deputy.

¶ 11    Defense counsel repeated its CRE 106 argument:

> [T]o play [People's Exhibit 2] without [Dejesus's] statements is to give the jury a video of what happened, show the contraband being found, and if the video is edited in the way that the People have . . . it [would] give[] an impression that [Dejesus] did not disclaim ownership of the contraband. That, essentially, the jury will see the video and say all right, well, they found the meth and [Dejesus] apparently didn't have anything to say about that."

5

¶ 12    The district court overruled defense counsel's objection, concluding that because none of Dejesus's statements were to be admitted in the video, CRE 106 was inapplicable.

¶ 13    At trial, Dejesus argued that the methamphetamine found in his pockets was "not his meth," he had "been framed," and law enforcement's story "about where this meth came from [did] not add up." The jury found him guilty of possession with intent to distribute a controlled substance but acquitted him of introducing contraband in the first degree. Following the verdict, the parties stipulated to a sixteen-year prison sentence in exchange for dismissal of the habitual counts as well as the charges in another case. The district court accepted the agreement and sentenced Dejesus accordingly.

## II.    Discussion

¶ 14    Dejesus contends that his exculpatory statements on People's Exhibit 2 should have been admitted under the rule of completeness or alternatively, the doctrine of opening the door. We agree that the statements should have been admitted under the rule of completeness, and therefore, we do not address Dejesus's alternate contention. And because we conclude that the district

court's error in admitting People's Exhibit 2 without Dejesus's statements was not harmless, we reverse his judgment of conviction.

## A. Record Sufficient for Review

¶ 15  Initially, we address the People's assertion that the record does not reflect what portions of the footage on People's Exhibit 2 was "actually muted or played for the jury" and therefore, because we cannot properly assess Dejesus's claim, we should "presume the correctness of the court's ruling excluding all of [Dejesus's] statements" from People's Exhibit 2.  We are not persuaded.

¶ 16  "According to the presumption of regularity, appellate courts presume that the trial judge did not commit error absent affirmative evidence otherwise." *LePage v. People*, 2014 CO 13, ¶ 15.  The burden is on the party asserting error to "affirmatively show that [error] occurred."  *Id.* at ¶ 16.  And reviewing courts "must review and consider the entire record" to determine whether the party asserting error has met its burden.  *Id.*

¶ 17  The record on appeal contains only an audio version of People's Exhibit 2, not the redacted or muted version that was shown to the jury.  To support his argument that the district court

erred, Dejesus relies on the statements made by the parties in the transcript concerning which portions of People's Exhibit 2 would be played and what portions would be muted following the district court's ruling to exclude Dejesus's exculpatory statements. Indeed, after the court overruled defense counsel's CRE 106 argument, the prosecutor explained that People's Exhibit 2 would "[e]ssentially" be played without audio except for Deputy Smith's question to Dejesus, "Do you have anything else on you?" after the large baggie of methamphetamine was found, but before the five smaller baggies of methamphetamine was found.

¶ 18 People's Exhibit 2 was played for the jury during the trial with no objection from either side that anything outside of what was previously ordered had been played. Further, the prosecutor examined Deputy Smith as follows:

> PROSECUTOR: Now, after you completed the search in the sally port, did you ask [Dejesus] if he had anything else on him?"
>
> DEPUTY SMITH: Yes, sir.
>
> PROSECUTOR: Did he disclose anything else?
>
> DEPUTY SMITH: No, he said nothing.

¶ 19    And later, the prosecutor asked Deputy Smith about Dejesus's interaction with the second deputy who searched Dejesus and found additional contraband:

> PROSECUTOR: Okay. Now, before [the second deputy] conducted his search, did [he] ask the defendant if he had anything that should not come into the jail?
>
> DEPUTY SMITH: Yes, sir.
>
> PROSECUTOR: Did [Dejesus] disclose anything that should not come into the jail?
>
> DEPUTY SMITH: He made no statements on it.

¶ 20    The second deputy testified similarly, stating, "I asked [Dejesus] if he had . . . anything on him that he should not [bring] into our facility."  When the prosecutor asked if, in response, Dejesus "disclosed anything else in his pockets," the second deputy responded, "No."

¶ 21    When the video exhibits (People's Exhibit 2 and Defendant's Exhibit A) were played during deliberations, one of the jurors asked why audio was (mistakenly) being played on Defendant's Exhibit A — which was played for the jury right before People's Exhibit 2 — and the district court explained, "Yeah, on Exhibit 2, there's a brief amount of audio, but on Exhibit A, there's no audio and on Exhibit

9

2 there's almost no audio." Defense counsel adjusted the audio on Defendant's Exhibit A and both exhibits were then played for the jury without any objection from either the prosecutor or defense counsel.

¶ 22    Accordingly, while the record on appeal contains only a full audio version of People's Exhibit 2, and not a redacted or muted version, the record clearly establishes that the jury viewed the exhibit with "almost no audio" other than Deputy Smith's inquiry to Dejesus as to whether he had anything else in his possession, and without any of Dejesus's exculpatory statements throughout the exchange. Therefore, we conclude that Dejesus has overcome the presumption of regularity, the record permits review of his claim, and we will address it.

### B.    Standard of Review

¶ 23    We review a district court's evidentiary rulings for an abuse of discretion. *People v. McLaughlin*, 2023 CO 38, ¶ 22. A district court "abuses its discretion when it misapplies the law or when its decision is manifestly arbitrary, unreasonable, or unfair." *Id.* A district court's "interpretation of the law governing the admissibility of evidence," however, is reviewed de novo. *Id.*

10

## C. Analysis

¶ 24 The rule of completeness provides that, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness be considered contemporaneously with it."  CRE 106; *see People v. Melillo*, 25 P.3d 769, 775 n.4 (Colo. 2001) ("The common-law rule of completeness is codified in CRE 106.").  The purpose of the rule "is to prevent a party from misleading the jury by allowing into the record relevant portions of a writing or recorded statement which clarify or explain the part already received."  *McLaughlin,* ¶ 24 (citation omitted).

¶ 25 In *McLaughlin,* our supreme court held that "under CRE 106, if the prosecution creates a misleading impression by excluding a defendant's statements that ought in fairness be considered contemporaneously with the proffered evidence, then the rule of completeness requires the prosecution to introduce such statements."  *Id.* at ¶ 4.  There, the defendant was charged with felony driving under the influence (DUI) and his defense at trial was that he had not been driving.  *Id.* at ¶¶ 1, 7.  During the trial, the

11

prosecution introduced a bodycam video of the interaction between the defendant and the arresting deputy but redacted out, over the defendant's objection, all of the defendant's purported "self-serving hearsay" statements that referenced an unidentified driver. *Id.* at ¶ 7. Because the redactions implied that the defendant had "provided no explanation for how his car ended up in the parking lot," the court concluded that the district court erred by allowing the prosecution to introduce the redacted video — it was misleading and, in fairness, the defendant's statements should have been considered contemporaneously with the proffered evidence. *Id.* at ¶¶ 3-4, 28, 40. Moreover, the court noted its holding was "consistent with the touchtone of the rule of completeness: fairness." *Id.* at ¶ 31. This was "especially manifest" because the prosecution excluded the defendant's statements about the unidentified driver and then argued at trial that no evidence supported his theory that another driver existed. *Id.*

¶ 26     Like in *McLaughlin*, the version of the bodycam video that was shown to the jury contained the deputy's incriminating question to Dejesus but not Dejesus's exculpatory statements in response. After finding a large baggie of methamphetamine in Dejesus's

pocket, Deputy Smith asked Dejesus, "you got [any]thing else?" However, the prosecution redacted or muted all of Dejesus's responses immediately disclaiming full knowledge of the contraband. Thus, Dejesus's silence in response to Deputy Smith's question suggested to the jury that Dejesus did not have a contemporaneous explanation for how the drugs got into his pocket. But this was misleading: Dejesus's redacted or muted statements attempted to explain that he had no knowledge of the drugs found in his pockets and suggested that perhaps they were planted there by law enforcement or someone else.

¶ 27    Evidence may be admissible under CRE 106 if it explains, contextualizes, or otherwise cures a misimpression in the admitted portion. *See People v. Short*, 2018 COA 47, ¶ 46. As recorded, the audio version of the video evidence would leave a jury with the impression that Dejesus was unaware of the presence of drugs in his pants either because they were planted there by police or someone else.

¶ 28    To be sure, the error here is not that the misimpression established that, in fact, the drugs were planted on Dejesus. That

13

question was for the jury to decide, and whether the jury would have believed Dejesus's claim is irrelevant to our inquiry.

¶ 29 But because the redacted statements would have cured the misimpression that Dejesus lacked a contemporaneous explanation, Dejesus could properly seek admission of the statements under the rule of completeness. *See McLaughlin*, ¶ 26. Accordingly, we conclude that the district court abused its discretion by misapplying the rule of completeness and erred by allowing the prosecution to introduce the video without any of Dejesus's statements. Having so concluded, we do not address Dejesus's alternate contention that the prosecution opened the door to his statements.

¶ 30 The People, without conducting an error analysis, ask us to assume "that *McLaughlin*'s reasoning appli[es] and that the trial court erred," but nonetheless conclude that the error was harmless. But based on the facts presented, we cannot conclude that the error was harmless.

¶ 31 Where, as here, an error is not of constitutional dimension, we will reverse unless "the People . . . prove . . . that the error did not

substantially influence the verdict or affect the fairness of the trial proceeding." *James v. People*, 2018 CO 72, ¶ 19.

¶ 32    The People argue that the error was harmless given the overwhelming evidence that Dejesus "had methamphetamine on his person and possessed it with intent to distribute it."  They point to the evidence presented at trial relating to the packaging of the methamphetamine, the "stash of cash" found on Dejesus, and the drug expert's testimony that this evidence is indicative of distribution.

¶ 33    But to prove that Dejesus was guilty of possession with intent to distribute a controlled substance, the prosecution also had to prove beyond a reasonable doubt that Dejesus *knowingly* possessed a controlled substance.  § 18-18-405(1)(a), C.R.S. 2024 ("[I]t is unlawful for any person *knowingly* . . . to possess with intent to manufacture, dispense, sell, or distribute, a controlled substance.") (emphasis added).  And because of the district court's error, the prosecution argued this element was satisfied simply because Dejesus was "aware of" the drugs in his pocket.  But if the jury had been privy to Dejesus's emphatic statements immediately denouncing any knowledge of the drugs found in his pocket, it may

15

have doubted whether he was aware of the drugs in his pocket or not.  This inference would have been bolstered by the undisputed evidenced that Deputy Smith located no drugs during the initial search incident to arrest.

¶ 34  But without Dejesus's statements, his apparent lack of explanation suggested that he either ignored Deputy Smith's question or simply did not have an explanation for the drugs found in his pockets.  Either way, depicting him as having been silent in response to the deputies finding the drugs created a misleading impression that was directly relevant to an element of the charged offense.

¶ 35  Moreover, the People not only injected that misleading impression into the case, they also extensively relied on it to secure a conviction.  In the People's opening statement, the prosecutor repeatedly told the jury that Dejesus did not disclose to the deputies that he had drugs in his pocket despite being asked about it.  First, the prosecutor described how, after Deputy Smith found "a baggy full of drugs" in Dejesus's pocket, Dejesus was asked, "Do you have anything else?" yet he "did not disclose that he had any other items in his pockets."  Second, the prosecutor told the jury

that Deputy Smith "is going to explain to you what occurred," "[h]e will describe how he asked the defendant if he had anything of concern in his pockets, he will tell you how he located the large baggie of methamphetamine, he will tell you how he observed the jail deputy find more baggies once the defendant was inside of the jail." Third, the prosecutor told the jury, "The defendant, after being given multiple opportunities to disclose their presence, entered the jail with five baggies of meth in his pocket."

¶ 36 Throughout the testimony the prosecutor continued to highlight this version of the evidence. The prosecutor asked Deputy Smith if Dejesus disclosed whether "he had anything else on him" after Deputy Smith found the large baggie of methamphetamine, and Deputy Smith responded, "No, he said nothing." The prosecutor asked Deputy Smith if Dejesus disclosed to the second deputy after Dejesus was asked again if he "had anything that should not come into the jail," and Deputy Smith responded, "He made no statements on it." The prosecutor questioned the second deputy about whether he asked Dejesus if he "had anything that shouldn't come into the jail," and the second deputy responded that

he did ask, and Dejesus did not disclose that he had anything else in his pockets.

¶ 37     Finally, the prosecutor argued to the jury during its closing argument that the jurors should "apply what these witnesses told you," and "[t]he defendant was aware of those five baggies in his pocket." And during the prosecutor's rebuttal closing argument, he told the jury, "We had the body cams, and frankly, they are sufficient. They show you what happened."

¶ 38     But the version of the bodycam that was shown to the jury was not what happened. Instead, the district court's error permitted the People to create a misimpression that was directly relevant to an element of the crime charged and the primary issue at trial. Then, the People compounded the harm from that error by repeatedly suggesting to the jury that the misimpression was grounds to discount Dejesus's defense. And, of course, the People knew that the impression they had created gave an incomplete picture of the conversation. In effect, the People moved pretrial to prohibit the jury from hearing Dejesus's exculpatory statements renouncing all knowledge of the contraband found in his pockets

18

and then affirmatively argued throughout the trial that no such statements existed.

¶ 39    Nor are we persuaded by the People's argument that the district court's error was harmless because Dejesus was still able to argue his defense that the drugs were planted by pointing out that Deputy Smith did not find any contraband during the first search (Defendant's Exhibit A) and the bodycam video went "on and off" at very convenient times.  But the defendant in *McLaughlin* also persisted in his defense that he was not driving — even though his statements to the contrary had been redacted by the People.  *See McLaughlin*, ¶ 1.  It was because of this that our supreme court concluded that the district court's errors required reversal.  *See id.* at ¶ 19 ("[B]ecause McLaughlin's defense rested entirely on his assertion that he was not the one driving the truck, his apparent lack of explanation for how the truck got to the scene in the redacted video significantly undermined that defense.").

¶ 40    Finally, while we do not know how the jury might have viewed Dejesus's statements had they been admitted, and do not express any opinion on the merits of Dejesus's defense, his apparent silence in response to the deputies' contraband discoveries had the

potential to create a compelling inference of guilt. *See United States v. Hale*, 422 U.S. 171, 176 (1975) ("Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation."); *Vanderpauye*, ¶ 60 ("It is human nature to expect that a person falsely accused of a crime . . . will deny the accusation rather than stay silent.  Silence in that context is deafening.").  Therefore, under the circumstances, we cannot conclude that the error did not substantially influence Dejesus's verdict or affect the fairness of the trial proceeding.  Accordingly, we reverse the conviction for possession with intent to distribute a controlled substance and remand for a new trial.

## III.   Disposition

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE PAWAR and JUDGE SCHUTZ concur.